O’NIELL, C. J.
 

 The question in this case is whether the conservation laws of the state give to the holder of a license to hunt and trap wild game and fur-bearing animals; the right to hunt and trap on any and all marsh land, even against the protest of the owner of such land, if the land be subject to tidal overflow, .unfenced, not in cultivation or used as a pasture, and not set apart as a game preserve.
 

 Plaintiff here owns a tract of marsh land, exceeding 5,000 acres in area, fronting nearly 4 miles on the east bank of the Mississippi river, about 85 miles below New Orleans. The land is not fenced, or cultivated, or used for a pasture; and, excepting the ridge that extends back only a few acres from the river, and the ridges forming the banks of several bayous in the land, it is subject to tidal overflow, and not fit for cultivation.
 

 Each of the six defendants holds a state license, declaring that he “has paid the li
 
 *497
 
 cense fee required by law, and is entitled to hunt such game birds and game animals, and to catch or trap such animals as are defined under the laws of the state of Louisiana, during the open season, and in such manner and at such times and places as permitted by law.” The defendants, pursuing a custom which had prevailed among the local hunters and trappers from time immemorial, went upon plaintiff’s land, without his consent and, for their own profit, engaged in hunting the wild game and in trapping the fur-bearing animals on the land.
 

 The plaintiff had posted notices, printed in bold letters, on boards measuring 18 inches square, along the boundaries of the land and along the banks of the bayous running through the land, forbidding trespassing within the line of stakes, under penalty of the law. The notices and intervening stakes were spaced close enough together to serve their purpose.
 

 Similar notices, describing the land, were published in the two newspapers published in the parish where the land is situated.
 

 Plaintiff also had a man employed patrolling the land, making the rounds regularly through the bayous, warning hunteri and trappers against trespassing upon the land. He delivered to each of the defendants personally a written demand that they should quit hunting and trapping on the land. The defendants refused to quit. Thereupon plaintiff brought this suit, alleging the facts which we have stated, and praying for a preliminary injunction, to be eventually made perpetual, forbidding the defendants to go upon the land for the purpose of hunting or trapping.
 

 The district judge issued a rule, ordering the defendants to show cause why the preliminary injunction should not issue.
 

 Answering the petition, and ^ the rule to show cause,'the defendants denied that plaintiff was entitled to any relief, on the facts stated, and they set up a reconventional demand for a judgment in their favor, declaring that they had the right to go upon any part of the land described in plaintiff’s petition “for the purpose' of trapping, taking, capturing, killing, or removing from the land, any animal, fowl, bird, or quadruped, without the consent or permission of the plaintiff or of any other person, and further condemning the said Manuel Oscar Buras to pay to respondents, as plaintiffs in reconvention, the sum of $3,250, as damages, with legal interest,” etc. The damages claimed were-said to be $2,500 for the alleged or approximated value of the fur-bearing animals which, defendants alleged, this suit had prevented their trapping, and $750 for attorneys fees alleged to have been incurred in defending the suit.
 

 Having heard argument on the rule, the district judge refused to issue a temporary injunction. The case was then heard on its merits, resulting in a judgment for the defendants, rejecting the plaintiff’s demand for an injunction “and recognizing the defendants’ right to enter upon the premises described in the petition herein, for the purpose of trapping and removing therefrom such wild life and fur-bearing animals as are permitted by state license.” The plaintiff has appealed.
 

 The Civil Code, in article 3415, after declaring that the wild beasts and birds have no owner while they are at large, and that when captured they become immediately the property of their captor, whether he takes them from his own land or from the land of another, says:
 

 “But the proprietor of a tract of land may forbid any person from entering it for the purpose of hunting thereon.”
 

 The argument of the defendants is twofold. It is contended, first, that this provision of the Code, recognizing the right of any and every landowner to forbid hunting on his
 
 *500
 
 land, was repealed by implication, or superseded, by section 20 of the Conservation Law (Act 204 of 1912), as to marsh land, subject to tidal overflow; and not fenced, or in cultivation, or used as a pasture, or set apart as a game preserve. In the alternative, the defendants contend that plaintiff’s land, being subject to overflow regularly from the gulf, tides, is “seashore,” according to -the definition in the Civil Code, and is therefore not subject to private ownership. They refer to articles 450, 451, 452 of the Civil Code, viz:
 

 Art. 450 (441). “Things which are common are those the ownership of which belongs to nobody in particular, and which all men may freely use, conformably with the use for which nature has intended them; such as air, running water, the sea and its shores.
 

 Art. 451 (442). “Seashore is that space of land, over which the waters of the sea Spread in the highest water, during the winter season.
 

 Art. 452. (443). “Erom the public use of the seashores, it follows that every one has a right to build cabins thereon for shelter, and likewise to land there, either to fish or shelter himself from the storm, to moor ships, to dry nets, and the like, provided no damage arise from the same to the buildings and erections made by the owners of the adjoining property.”
 

 'The district judge, in bis written opinion, maintained the defendants’ contention that the provision in article 3415 of the Civil Code, recognizing the right of every landowner to forbid hunting on his land, was repealed by implication, or superseded, by section 20 of Act 204 of 1912, in so far at it had applied to marsh land, subject to- tidal overflow, and unfenced, and not cultivated or used for a pasture, or set apart as a game preserve. The judge did not maintain that the land was “seashore,” not subject to private ownership. He must have concluded or assumed that the land was not “seashore” ; otherwise there would have been no occasion for pronouncing judgment upon the repealing effect of section 20 of Act 204 of 1912; as to marsh land that is subject to private ownership.
 

 We concur in the opinion that plaintiff’s land should not be classed as “seashore,” or public property. The fact that it is subject to tidal overflow does not characterize the land as “seashore,” under the provisions of the Code. The statutes providing for disposing of such lands, either by the state or by the federal government, describe them as being subject to tidal overflow. It has never heretofore been supposed that the definition in article 451 of the Civil Code was intended to include in the term “that space of land over which the waters of the sea spread in the highest water during the winter season,” any and all land that is subject to tidal overflow, however remote from the “seashore,” as it is generally understood. The waters of the Gulf of Mexico, or the bays or coves behind plaintiff’s land, do not “spread” upon it, during the ordinary high tides, or in the highwater seasons. The tide waters back up into the coves behind the land, and cause the bayous in the land to rise and spread over most of the area. These expressions in the Code “the sea and its shores,” and “seashore,” have reference to the gulf coast, and to the lakes, bays and sounds along the coast. The nearest body of water that could reasonably be characterized as a part of the sea, or as having a seashore, in this case, is a small bay nearly a mile away from plaintiff’s land.
 

 In the case of Morgan v. Nagodish, 40 La. Ann. 246, 3 South. 636, the question presented was whether the plaintiff’s marsh land was “seashore,” under the definition in Article 451 of the Civil Code. The land was situated very much like that of the plaintiff in this case, with relation to the gulf, a small bay, and a bayou penetrating the land, which was subject to tidal overflow. The court’s ruling in the case is accurately expressed in the headnotes, thus:
 

 “If the salt water ascertained to be in a bayou, lake, cove, or inlet adjacent to, or con
 
 *501
 
 nected with, an arm of the Gulf of Mexico, does not result from an overflow that is occasioned by high tides flooding its banks, but, in the first instance, enters an arm of the gulf, and thence passes into said bayou, lake, etc., and is there combined with fresh water derived from other sources, same cannot be considered as an arm of the sea, nor its banks the seashore.
 

 “All that tract of land over which the greatest water.flood extends itself is the seashore.
 

 “ ‘High seas’ mean that portion of the sea which washes the open coast, and do not include the combined salt and fresh waters which, at high tide, flood the banks of an adjacent bay, bayou, or lake” — citing Waring et al. v. Clarke, 5 How. 453, 12 B. Ed. 226.
 

 The judgment appealed from, as we have said, is founded upon the proposition that the provision in article 3415 of the Civil Code, allowing any and every landowner to forbid hunting on his land, was repealed by implication, with regard to unfenced and vacant marsh land, by section 20 of Act 204 of 1912, viz.:
 

 “Section 20. Be it further enacted, etc., that
 
 nothing
 
 in this act shall be construed to give the holder of a hunting license permission to hunt on the cultivated or pasture lands of another person without the written consent of said owner.”
 

 The court’s ruling was that, under the maxim “expressio unius personse vel rei est exclusio alterius,” the denial of the right of a licensed hunter to hunt on any cultivated or pasture lands of another person without his written consent implied the right of every licensed hunter to hunt on the uncultivated and nonpasture lands of other persons — not only without their written consent, but even against their prot,est. The court extended the implication too far. The statement in the statute that a licensed hunter shall not hunt on the cultivated or pasture lands of another person without his written consent, leaves the inference that a licensed hunter may hunt on the uncultivated and nonpasture lands of another person without his written consent; but that is quite consistent with the right of the proprietor of any character of land, under article 451, to forbid hunting on the premises. The difference between one’s right to go on another’s land without first obtaining his consent in writing, and the right to go there against the landowner’s protest, is so glaring that we cannot see any conflict at all between the right of a landowner, under article 3415 of the Civil Code, to forbid hunting on his premises and the right of a licensed hunter, inferred from section 20 of Act 204 of 1912, to hunt on the uncultivated and nonpasture lands of other persons without their written consent, provided they do not protest. Section 20 of Act 204 of 1912, is, in plain terms, a restriction or limitation — not an extension — of the right of a licensed hunter to hunt on the lands of other persons. Without this restriction or • limitation, with regard to cultivated or pasture lands, the landowner’s silence might give consent. The holder of a hunter’s license might claim the right to hunt in his neighbors’ cultivated fields and pastures, so long as the neighbors did not protest or post their fields and pastures with warnings to hunters to stay out. As it is section 20 of the statute does away with the presumption which might otherwise prevail that the holder of a hunting license has the right to hunt in the cultivated fields and pastures of other persons if they do not formally protest. But this language of the statute, surely, does not take away the right of the proprietors of uncultivated and non-pasture lands to forbid hunting on the premises.
 

 The district judge, in his written opinion, refers also to section 26 of the Act 204 of 1912, viz:
 

 “Section 26. Be it further enacted, etc., That no person shall take or disturb fish, birds óigame, in any private park or private lands, or trespass thereon, for that purpose, after notice as prescribed herein.”
 

 The “notice as prescribed herein” means the notice which is required by sec
 
 *504
 
 tions 22 to 25, to establish and protect a private game preserve, or propagating ground, or nesting place, as it is called in section 22. Those sections of the statute refer exclusively to private game preserves, propagating grounds, or breeding places. However, if section 26 should be construed as applying to other lands, it could not reasonably be construed to deprive the owners of such lands of their right to forbid trespassing thereon.
 

 The fundamental doctrine that' the wild beasts and birds belong to the state in her sovereign capacity, and for the benefit of all of her citizens, is not at all contrary to the fight of every landowner to forbid other persons to hunt or trap wild beasts or birds on his land. Although a landowner does not, literally, own the wild beasts and birds on his land, he controls the right to enter upon his land for the purpose of hunting or trapping the wild beasts or birds. That right, on the part of the landowner, is, of course, subject to the conservation laws of the state enacted in the exercise of her police power. But the state does not undertake to deprive a landowner, for the benefit or- profit of other individuals, of his exclusive right of possession of his land.
 

 Counsel for appellant have argued, very forcibly, that, if the Act 204 of 1912 should be construed as depriving him of his right ■to forbid others to hunt on his land, the law would be unconstitutional, in that it would deny him the equal protection of the laws, and deprive him of his property without due process of law, and without compensation. Having concluded that the statute does not purport to deprive any landowner of his right to forbid hunting or trapping on his land, we have no occasion for saying whether the law would be unconstitutional if it did purport to have that effect.
 

 The judgment appealed from is annulled, and it is now ordered adjudged and decreed that the defendants, Anthony Salinovich, Anthony Scobel, Forest Morgan, Sam Salinovich, August'Buras and George Salinovich, are hereby enjoined to quit hunting, trapping, or otherwise trespassing, upon the land of the plaintiff, Manuel Oscar Buras, described as the N. E.
 
 %
 
 and S.
 
 Yz
 
 of S. E. % of section 53, the N. W. % and S.
 
 Yz
 
 of section 54, the W.
 
 Yz
 
 of section 56, all of fractional sections 57, 58 and 59, and the irregular sections or lots numbered 23 to 45, inclusive, fronting on the east bank of the Mississippi river, in township 20 S., range 18 E., in the parish of Plaque-mines. The defendants are to pay the costs of this suit,