UNITED STATES of America

v.

Quince Clayton PLOTT, Defendant.

No. 72 Cr. 272.

United States District Court,
S. D. New York.

June 8, 1972.

Whitney North Seymour, Jr., U. S. Atty., S. D. New York, for the United States; Ross Sandler and Anne Sidamon-Eristoff, Asst. U. S. Attys., of counsel.

Sanders, Hester, Holley, Askin & Dye, Augusta, Ga., Weiss, Bronston, Rosenthal, Heller & Schwartzman, New York City, for defendant; Elkan Abramowitz and Michael R. Sonberg, New York City, of counsel.

LASKER, District Judge.

The defendant moves: (1) pursuant to Federal Rule of Criminal Procedure 12(b), to dismiss the indictment for

failure to charge offenses; (2) pursuant to Federal Rule of Criminal Procedure 21(b), to transfer the proceedings to the United States District Court for the Southern District of Georgia (Savannah Division); and (3) pursuant to Federal Rule of Criminal Procedure 7(d), to strike as surplusage certain language of the indictment. For the reasons discussed below, the motion to dismiss the indictment is denied, the motion to transfer is granted, and the determination of the motion to strike alleged surplusage in the indictment is deferred for decision by the transferee court.

### A. The Motion to Dismiss

The indictment contains seven counts. Counts 1 through 6 allege violation of 18 U.S.C. § 2314 and charge in substance that defendant unlawfully transported from Atlanta to New York alligators that were "poached and otherwise converted in violation of State and local law" "knowing the same to have been stolen, converted or taken by fraud. . . ." Count 7 alleges violation of 18 U.S.C. §§ 43(a) (2) and 43(f), charging that defendant unlawfully caused alligator skins to be transported and knowingly and wilfully sold them in interstate commerce in violation of the laws and regulations of the State of Georgia.

Defendant contends that the acts described in Counts 1 through 6 do not constitute a violation of § 2314, arguing that "poaching" is not "stealing," "converting" or "taking by fraud" within the meaning of the statute. As a secondary defense he claims that if the acts charged state an offense under § 2314, then § 2314 does not afford due process because its language does not give fair warning that the conduct described is governed by its terms.

Admitting for the purpose of the argument that defendant did not originally have title to the skins, defendant claims that reducing them to possession cannot constitute "stealing, converting or taking by fraud," or, indeed, larceny of any kind, but, at most, trespass. He analogizes the charges here to the killing of a wild animal in other than open hunting season, for which the penalty may be prosecution, for example, for violation of a fish and game law but not for larcenous conduct. He cites the rule of Geer v. Connecticut, 161 U.S. 519, 529, 16 S. Ct. 600, 604, 40 L.Ed. 793 (1896), that

> " . . . the ownership of wild animals, so far as they are capable of ownership, is in the state, not as a proprietor, but in its sovereign capacity, as the representative and for the benefit of all its people in common."

and argues that *Geer* establishes that no one can own animals and accordingly their taking cannot violate a statute which prohibits interstate shipment of goods "stolen, converted or taken by fraud."

■ Defendant's narrow construction of the statute has no merit. The decisions are numerous that the words "stolen" and "converted" cover a broad range of wrongful acts. As the Court of Appeals of this Circuit· has said (quoting Crabb v. Zerbst, 99 F.2d 562, 565 (5th Cir.1938) ):

> "Stealing, having no common law definition to restrict its meaning as an offense, is commonly used to denote any dishonest transaction whereby one person obtains that which rightfully belongs to another, and deprives the owner of the rights, and benefits of ownership, but may or may not involve the element of stealth usually attributed to the word purloin." United States v. Handler, 142 F.2d 351 at 353 (2d Cir.1944).

See also United States v. Turley, 352 U.S. 407, 411, 77 S.Ct. 397, 399, 1 L.Ed. 2d 430 (1957), in which the Court, construing the Motor Vehicle Theft Act (18 U.S.C. § 2312), stated: " 'Stolen' has no accepted common-law meaning." As to the word "converting" see Morissette v. United States, 342 U.S. 246, 272, 72 S. Ct. 240, 96 L.Ed. 288 (1952).

■■ Furthermore, even if it were true, as defendant contends, that the sovereign in the states of interest here

does not "own" game and wild animals, a defendant possessing such animals might still be guilty of stealing, since the act of stealing is as much defined by the taker's intent to keep property to which he has no right as it is by esoteric questions of legal title in others. But it is unnecessary to rest on such semantic analysis, for it is clear that the states in question here do own wild life and game within the meaning of § 2314. The *Geer* rule, which is still the federal law, far from holding that the state does not own wild animals, clearly specifies that it *does*, "not as a proprietor, but in its sovereign capacity, as the representative and for the benefit of all its people in common." Thus *Geer* regards a state's relationship to wild animals as an owner in trust, and taking from an owner in trust constitutes stealing or converting within the meaning of § 2314 just as much as taking from any other owner.

■ Nor is there merit to the defendant's argument that the statute does not provide the warning, required by due process, that his conduct was proscribed. Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 331, 96 L.Ed. 367 (1951), does not hold to the contrary. Indeed, that opinion itself states in part that the language of a statute is not constitutionally required to provide "more than a reasonable degree of certainty" as to the acts prohibited, and adds: "Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." Furthermore, if, as we have found above, the acts charged in the indictment do constitute "stealing" and "converting" within the meaning of the statute, then, as a matter of definition, the defendant was adequately warned by the wording of the statute.

Defendant claims that Count 7, alleging a violation of § 43, states no offense because, as he argues, the violation referred to in § 43 must be of a criminally sanctioned state law or regulation, and Rule 260-2-.60 of the Georgia Game and Fish Commission, which the indictment charges to have been violated contains no criminal sanction.

■ While it is true that the game regulation does not in itself contain a criminal sanction, defendant's argument, however ingenious, must fail. Rule 262-2-.60 was promulgated pursuant to § 45-114, Georgia Ann.Code, enacted in 1955. Section 45-116 of the Code, enacted the same year, specifies:

> "Any person or corporation who shall violate any of the rules or regulations promulgated by the commission shall be guilty of a misdemeanor and upon conviction shall be punished as provided by law."

Thus, the whole foundation upon which the defendant's edifice is built collapses. However, even if this were not true, there would still be no support for defendant's position. Nothing in the wording of the Lacey Act (18 U.S.C. § 43(a)), which proscribes transportation or sale in interstate commerce of "any wildlife taken, transported, or sold in any manner in violation of any law or regulation of any State or foreign country", supports the argument that it applies only to violations of state criminal statutes or regulations. Indeed, the broadness of the statute's language suggests a contrary conclusion, particularly when considered in the light of Congress' objective of assisting the states to preserve their game. The defendant cites no authority for his novel construction, and, even bearing in mind the requirement that criminal statutes be narrowly construed, we find that it lacks merit.

## B. The Motion to Transfer

■ The defendant moves to transfer the case to the Southern District of Georgia (Savannah Division). The parties agree that the criteria set forth in Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 243–244, 84 S.Ct. 769, 11 L.Ed.2d 674 (1963), control in determining whether a criminal proceeding ought to be transferred for the conven-

ience of witnesses and in the interest of justice under Rule 21(b), Fed.R.Crim.P. Applying those standards, it appears proper that the case should be transferred.

(1) Location of Defendant:

The defendant resides in the Northern District of Georgia. Although the government points out that Savannah is 200 miles from the defendant's home, it is nevertheless considerably closer to his residence than New York is.

(2) Location of possible witnesses:

The government's chief witness resides in New York. Most of defendant's witnesses reside in Georgia, as do some of the government's.

(3) Location of events likely to be in issue:

The defendant argues that the events primarily in issue will relate to the taking of alligators, shipping of skins, and, in general, the nature of defendant's business, all of which are centered in Georgia. The government replies that the events of the case are evenly divided between Georgia and New York.

(4) Location of documents:

Although the government states that "in large part" the records which it will need at trial are located in New York, it implies that some records are to be found elsewhere and all of the defendant's documents are located in Georgia.

(5) Disruption of defendant's business:

It is reasonable to suppose that defendant's business will be disrupted wherever trial takes place, since it is not located in either Savannah or New York.

(6) Expense to the parties:

It is clear that the expense to defendant will be substantially greater if the case is tried in New York. The defendant has retained special New York counsel (in addition to his primary Georgia counsel) against the possibility of a New York trial. In the event of a Georgia trial, New York counsel would be unnecessary. Furthermore, the expense of travel to New York and residing in New York during the course of the trial would be greater than maintenance expense in Georgia, and telephone management of defendant's business would be less expensive from Savannah than from New York. The government does not claim that it would incur greater expense in the event of a Georgia trial. Indeed, it is possible that its expenses would be less in such circumstances, since more of the government's witnesses appear to be in Georgia than its single, although chief, witness in New York. Therefore, it is likely that travel expense and maintenance of the government's witnesses would be greater if the trial were held in New York rather than Georgia.

(7) Location of counsel:

As already indicated, defendant's primary counsel is in Augusta, Georgia. Although the government reminds us that they do not practice in Savannah, nevertheless it is clear that their location nearby would facilitate their participation at trial and lessen expense.

(8) Relative accessibility of the place of trial:

With the exception of the "chief witness" for the government, there appears no question that Savannah is considerably more accessible to all who would be called at trial.

(9) Docket condition:

The defendant argues that the calendar of this district is far busier than that of the Southern District of Georgia. However, the contention is irrelevant in this case, since the matter has been set for trial in July in this district.

■ We believe, on analysis of the cumulative effect of the facts outlined above, that the case ought to be transferred to Savannah for the convenience of witnesses and in the interest of justice. While it may be true that, as a

general rule, a criminal prosecution should be retained in the original district (United States v. United States Steel Corp., 233 F.Supp. 154 (S.D.N.Y. 1964), it is of equal import that "venue statutes should, whenever possible, be construed so to permit trial at the residence of the defendant. United States v. Johnson [323 U.S. 273, 275, 65 S.Ct. 249, 89 L.Ed. 236 (1944)]." United States v. Cashin, 281 F.2d 669, 675 (2d Cir. 1960).

Accordingly, the motion to dismiss the indictment is denied. The motion to transfer the proceedings to the United States District Court for the Southern District of Georgia (Savannah Division) is granted, and the Clerk of this Court is ordered forthwith to transfer the file of the case to the Clerk of the Court at Savannah. The motion to strike alleged surplusage in the indictment is deferred for determination by the transferee court.

It is so ordered.