306 So.2d 391 (1975)
Alex LEGER, Plaintiff-Appellant,
v.
LOUISIANA DEPARTMENT OF WILDLIFE AND FISHERIES and Burton Angelle, Defendants-Appellees.
No. 4808.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1975.
Rehearing Denied February 5, 1975.
Writ Refused April 11, 1975.
*392 Riddle & Bennett by Darrel D. Ryland, Marksville, for plaintiff-appellant.
Peter E. Duffy, Metairie, for defendants-appellees.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
Alex Leger instituted this action against the Louisiana Wildlife and Fisheries Commission and Burton Angelle, in his capacity as Commissioner of the Louisiana Department of Wildlife and Fisheries, to recover damages for the loss of his 1973 sweet potato crop. The trial court rendered judgment sustaining defendants' exception of no cause of action, and plaintiff appealed.
Two important issues are presented. One involves an interpretation of LSA-R. S. 56:102. The other is whether plaintiff has alleged facts sufficient to show that defendants, through their employees, were negligent and thus liable to plaintiff for damages under Article 2315 of the Civil Code.
The applicable law is settled that for purposes of the exception of no cause of action, all well pleaded facts in the petition must be taken as true. If the petition sets forth a cause of action in any respect, the exception must be overruled. Burns v. Genovese, 254 La. 237, 223 So.2d 160 (1969).
The following are the pertinent facts alleged in plaintiff's original and supplemental petitions.
In March and/or April, 1973, plaintiff bedded potatoes on property in Avoyelles Parish for the purpose of planting a potato crop. The Red River began to flood in February, March and/or April of that *393 year, and the flooding caused deer in that area to migrate toward the property in which plaintiff had bedded his potatoes. The deer ate Leger's plants during March, April and May, causing substantial damage to his 1973 potato crop. Upon first noticing the deer eating his potatoes, plaintiff called Tom Britt, an employee of the Louisiana Department of Wildlife and Fisheries, and told him that it would be necessary to kill the deer in order to save his 1973 sweet potato crop. In response to that call, Britt inspected the field of bedded potatoes, and he informed plaintiff that "he as agent of the Louisiana Department of Wildlife and Fisheries would institute prosecution for violation of Wildlife and Fisheries ordinances should petitioner kill any of the deer to save his crop." Leger could have saved his entire crop had he been able to shoot the deer which were eating his potatoes.
After setting out the above facts, plaintiff alleges several conclusions of law. He asserts, for instance, that Britt, in acting within the course and scope of his employment with the Louisiana Department of Wildlife and Fisheries, is legally responsible for the damage to his 1973 potato crop, and that the Department of Wildlife and Fisheries and Burton Angelle, as Commissioner, also are liable to him under LSA-C.C. Art. 2315 for the damages he sustained.
Plaintiff also alleges that "by virtue of LSA-R.S. 56:102, the Louisiana Department of Wildlife and Fisheries is the owner of all wild birds and wild quadrupeds, which includes wild deer," and that "under Article 2321 of the Louisiana Civil Code the owner of an animal is answerable for the damages it caused and therefore, since the Department of Wildlife and Fisheries owned the deer which were eating petitioner's potatoes ... they are legally responsible for the damage done to his 1973 potato crop ..." His pleadings conclude with allegations that Britt was at fault in several particulars, and that his acts are imputed to the Department of Wildlife and Fisheries.
The principal question presented is whether the Department is the owner of all wild quadrupeds found in the state, and if so is its ownership of such a nature that it is responsible under LSA-C.C. Art. 2321 for the damages to plaintiff's crop caused by wild deer.
LSA-R.S. 56:102 provides, in part, that:
"The ownership and title to all wild birds and wild quadrupeds found in the state is declared to be in the State of Louisiana in its sovereign capacity. The title of the state to all such wild birds and wild quadrupeds, even though taken in accordance with the provisions of this Sub-part always remains in the state for the purpose of regulating and controlling the use and disposition thereof...."
Article 2321 of the Civil Code provides that the owner of an animal is answerable for the damage he has caused.
Plaintiff's argument, consistent with his pleadings, is that "since the Department of Wildlife and Fisheries owned the deer which were eating petitioner's potatoes, they are legally responsible for the damages done to his 1973 sweet potato crop". He relies on Harris v. Roy, 108 So.2d 7 (La.App. 2 Cir. 1958); and Raziano v. T. J. James & Co., 57 So.2d 251 (La.App.Orl. 1952).
The cited cases involved claims for damages allegedly caused by domestic animals owned by private parties. Neither of those cases required an interpretation of LSA-R.S. 56:102. No question was raised in either suit as to whether the state, or any of its agencies, have a proprietary interest in wild animals and if so, whether the state has a duty to control them and whether it can be held liable for damages done by those animals. The Harris and Raziano cases thus are not applicable here.
*394 We have concluded that the wild birds and wild quadrupeds found in the state are owned by the State of Louisiana in its sovereign capacity, as distinguished from its proprietary capacity, and that it owns them solely as trustee for the use and common benefit of the people of the state. Because of its ownership in a sovereign capacity, and in the exercise of its police power, the state may regulate and control the taking and subsequent use of wild birds and wild quadrupeds, and the property rights which may be acquired in them. Lacoste v. Department of Conservation, 263 U.S. 545, 44 S.Ct. 186, 68 L.Ed. 437 (1924); Geer v. State of Connecticut, 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793 (1896); Foster-Fountain Packing Co. v. Haydel, 278 U.S. 1, 49 S.Ct. 1, 73 L.Ed. 147 (1928).
LSA-R.S. 56:102 has as its source Act 273 of 1926. We think the language used in that section of the Revised Statutes, and in other sections having the 1926 act as their source, compels the conclusion that the state's ownership is in a sovereign, and not a proprietary, capacity. Section 102, for instance, provides that the title to wild birds and quadrupeds is declared to be in the state "in its sovereign capacity," and that the title remains in the state "for the purpose of regulating and controlling the use and disposition thereof." The Department of Wildlife and Fisheries, in the exercise of the state's police power, is given the duty of protecting wild birds and wild quadrupeds, of preventing the destruction of feeding and breeding grounds, of establishing game refugees or preserves, and of regulating the taking, killing or transporting of wild birds and wild quadrupeds. LSA-R.S. 56:101 et seq.
The law specifically authorizes and provides rules for the taking or killing of wild birds and wild quadrupeds by private persons, and the appropriation of the birds and animals so taken to private use. It provides for the issuance of hunting and trapping licenses to private persons for that purpose. The Legislature clearly did not intend for Act 273 of 1926 (now LSA-R.S. 101 et seq.) to vest title to all wild birds and wild quadrupeds in the state, in its proprietary capacity, and thus make them items of state owned property, while at the same time authorizing private persons to take and appropriate that publicly owned property to their own private use.
We find nothing in the cited statutes or in the law which indicates that the state has a duty to harbor wild birds or wild quadrupeds, to control their movements or to prevent them from damaging privately owned property. If such a duty should be imposed on the state, then it would mean in many instances that the state would have to impound or confine some birds and animals, and they thus would cease to be wild creatures, but instead would be birds or animals which had been taken, possessed or harbored. It would mean in some cases that the state would have to restrict or interfere with the migration or other habits of our wildlife, or it would have to destroy them. We do not believe that the Legislature intended for any such duty to be placed on an agency or department of the state.
In Pavel v. Pattison, 24 F.Supp. 915 (D. C.W.D.La.1938), the validity of a Louisiana statute regulating the trapping of furbearing animals or alligators was at issue. The court said:
"It is well settled that the wild life, including animals, fish and fowl, is under the control of the State, which holds the title thereto in trust for all the people; that it may prohibit the taking, catching or killing of any or all of it; and that it may also, under proper conditions, confine these privileges to its own citizens."
The United States Supreme Court, interpreting another Louisiana statute in Lacoste v. Department of Conservation, supra, held:
"The wild animals within its borders are, so far as capable of ownership, owned by the state in its sovereign capacity *395 for the common benefit of all of its people. Because of such ownership, and in the exercise of its police power the state may regulate and control the taking, subsequent use and property rights that may be acquired therein."
Other authorities to the same effect are United States v. Plott, 345 F.Supp. 1229 (S.D.N.Y.1972); State v. Ward, 328 Mo. 658, 40 S.W.2d 1074 (1931); Buras v. Salinovich, 154 La. 495, 97 So. 748 (1923); Barrow v. Holland, 125 So.2d 749 (Fla. 1960). See also 3A C.J.S. Animals § 7, page 477.
It is for these reasons that we have concluded that the ownership of all wild birds and wild quadrupeds is vested in the state solely in its sovereign capacity, as trustee for the use and common benefit of the people of the state.
We also conclude that LSA-C.C. Art. 2321 does not apply here, since the state does not own wild quadrupeds in its proprietary capacity and it does not harbor such animals. We think that article of the Civil Code applies only to the owner of an animal who owns or harbors it in a proprietary capacity. See Marsh v. Snyder, 113 So.2d 5 (La.App.Orl.1959). If the animal is owned or harbored, it is not a wild quadruped. In the instant suit the state did not harbor the deer which caused the damage, and it did not own them in a proprietary capacity.
If the interpretation urged by plaintiff should be placed on LSA-R.S. 56:102 and Article 2321 of the Civil Code, it would follow logically that the state has the impossible duty of preventing damage to private property by all wild birds and wild animals, including such things as crows, sparrows, squirrels, rats and fox. We do not think these laws were intended to have such an effect.
Plaintiff argues further that it is entitled to recover damages from defendants under Article 2315 of the Civil Code because of fault or negligence on the part of defendants' employee, Britt, in refusing to permit plaintiff to shoot the wild deer which were damaging his crop. We find no merit to that argument.
LSA-R.S. 56:6 provides, among other things, that the Commissioner "[s]hall protect and propagate, when possible, all species of birds and game of whatever description," and that he "shall rigidly enforce all law ... relative to the protection, propagation, and selling of birds and game ..." LSA-R.S. 56:124(1) provides that no person shall "Take... a wild deer at any time when driven to the high lands by overflow or high water." And, LSA-R.S. 56:139 provides criminal penalties for violation of the last cited section of the Revised Statutes.
Britt, as an employee of the Department, had no authority to allow plaintiff to shoot the wild deer which were damaging his crop, and he was not negligent in refusing to give plaintiff permission to do so. He simply informed plaintiff that he would perform the functions which were delegated to him and the Department of Wildlife and Fisheries by law if plaintiff killed the deer, and Leger thereupon elected to not shoot the animals which were causing the damage.
We question whether Britt's permission to shoot the deer, in the event such permission had been given, would have exculpated plaintiff from criminal responsibility, if any such responsibility in fact would have attached to the shooting. In any event, the statement made to plaintiff by Britt did not constitute a proximate cause of the loss. Britt's legal duty would have remained the same, regardless of the response he made to plaintiff's request. Plaintiff could have proceeded to shoot the animals and then raise the legal questions in the event charges were preferred against him. He could have applied for a written permit from the Commissioner under LSA-R.S. 56:112. Or, he could have instituted proceedings seeking injunctive relief, a mandamus or a declaratory judgment. *396 Whatever relief plaintiff might have sought, however, our holding here is that the statement made by Britt that he would discharge the duties imposed upon him and the Department by law did not constitute fault under LSA-C.C. Art. 2315 or a proximate cause of the loss.
The Department, through Britt, also was not negligent in failing to control the wild deer and in preventing the animals from damaging plaintiff's crop. We have already pointed out that the Department of Wildlife and Fisheries has no duty to take those steps.
Our conclusion is that plaintiff's original and supplemental petitions fail to state a cause of action against defendants under either Article 2315 or Article 2321 of the Civil Code. The trial judge thus correctly sustained the exception of no cause of action filed by defendants.
On this appeal plaintiff argues that LSA-R.S. 56:124(1) is unconstitutional in that it denies plaintiff his constitutional right to defend his property (his potato crop) from threatened injury by wild deer. The cited section of the Revised Statutes prohibits the taking of a wild deer at any time when driven to the high lands by overflow or high water.
We have not considered plaintiff's attack on the constitutionality of this statute, because it was not pleaded or urged in the trial court. The attack on the constitutionality of that statute apparently was made for the first time in the brief which plaintiff filed on this appeal.
The general rule is that a litigant cannot attack the constitutionality of a statute or ordinance unless its unconstitutionality is specially pleaded and the grounds particularized in the trial court. Summerell v. Phillips, 258 La. 587, 247 So. 2d 542 (1971). A litigant who fails to plead the unconstitutionality of a statute cannot legally raise the constitutional issue in the appellate court. Maher v. City of New Orleans, 256 La. 131, 235 So.2d 402 (1970). A few exceptions to the above general rule have been recognized, but none of them are applicable here.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.