UNITED STATES of America, Appellant,

v.

LONG COVE SEAFOOD, INC., John W. Schleede, Robert J. Yates, Individually and doing business as Bob Yates Seafood, Donald Aviano, Patrick A. Cantwell, Steven Dodge, Richard Harmon, Richard Reber, Donald Terry, Frederick J. Lovelace, Clifford Gibbs, Roger Dean, Joe Judge, Lance Sidey, Warren Ammerita, Anthony Lebaire, Carl Froehlich, Tito Imperatore, Joe Grucci, James Grucci, Joseph Annunziato, Eric Champlin, Leroy Still, Tommy DeVito, Francis Verity, Stanley Buys, John Coon, James Powers, Mark Wilde, Charles Laskowski, Paul Skinner, Fire Island Fisheries, Inc., Nick Sleager, Defendants-Appellees.

No. 809, Docket 78–1028.

United States Court of Appeals, Second Circuit.

Argued April 10, 1978.

Decided July 5, 1978.

---

Harvey M. Stone, Asst. U. S. Atty., Eastern District of New York, Brooklyn, N. Y. (David G. Trager, U. S. Atty., Douglas J. Kramer, Asst. U. S. Atty., Eastern District of New York, Brooklyn, N. Y., of counsel), for the United States of America.

Richard C. Cahn, Huntington, N. Y., for defendants-appellees and on brief, for defendant-appellee Donald Terry.

Paul E. Warburgh, Jr., New York City, on brief, for defendant-appellee Eric Champlin.

James Fallon, James Fallon, Jr., Sayville, N. Y., on brief, for defendants-appellees Nick Sleager and Fire Island Fisheries, Inc.

Lewis Edelstein, Rockville Center, N. Y., on brief, for defendant-appellee Joseph Annunziato.

Robert A. Margolin, Smithtown, N. Y., on brief, for defendant-appellee Anthony Lebaire.

George Nager, Stanley Gilbert, Mineola, N. Y., on brief, for defendant-appellee Richard Reber.

Edward F. Dull, Alexander J. Lapinski, Elmhurst, N. Y., on brief, for defendant-appellee Robert J. Yates.

Andrew Orensky, Coram, N. Y., on brief, for defendants-appellees Charles Laskowski and Mark Wilde.

John Braslow, North Babylon, N. Y., on brief, for defendant-appellee Stanley Buys.

Kenneth Rohl, Babylon, N. Y., on brief, for defendants-appellees John Coon, Roger Dean, Tommy DeVito, Carl Froehlich and Clifford Gibbs.

Donald V. Kane, Mineola, N. Y., on brief, for defendant-appellee Steven Dodge.

George Rochman, Garden City, N. Y., on brief, for defendants-appellees Joe Grucci and James Grucci.

Stephen Scaring, Mineola, N. Y., on brief, for defendant-appellee Richard Harmon.

Frederick Mars, Patchogue, N. Y., on brief, for defendant-appellee Tito Imperatore.

John F. Kuhn, Huntington, N. Y., on brief, for defendant-appellee Warren Ammerita.

David J. Gottlieb, The Legal Aid Society, Brooklyn, N. Y., on brief, for defendant-appellee Patrick A. Cantwell.

Leon Stern, Mineola, N. Y., on brief, for defendant-appellee Donald Aviano.

James Math, Mineola, N. Y., on brief, for defendant-appellee Lance Sidey.

Joseph R. Milone, Jr., Rockville Center, N. Y., on brief, for defendant-appellee James Powers.

Martin C. Julius, Mineola, N. Y., on brief, for defendant-appellee Paul Skinner.

Samuel Rutter, Huntington, N. Y., on brief, for defendant-appellee Leroy Still.

John Chamberlain, Garden City, N. Y., on brief, for defendant-appellee Francis Verity.

James J. Bove, Sayville, N. Y., on brief, for defendant-appellee Joe Judge.

Michael Di Renzo, New York City, on brief, for defendants-appellees Long Cove Seafood, Inc. and John W. Schleede.

Before FRIENDLY, GURFEIN and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal by the United States, pursuant to 18 U.S.C. § 3731, from a pre-trial order of the United States District Court for the Eastern District of New York, George C. Pratt, *Judge*, dismissing four counts of an eleven-count indictment on the ground that the National Stolen Property Act ("NSPA"), *as amended*, 18 U.S.C. § 2314, does not apply to interstate transportation of clams harvested in violation of state law.

The indictment in this case charges 33 individuals[1] with engaging in illicit interstate commerce in clams taken in violation of § 13–0325 of the Environmental Conservation Law of the State of New York. In counts one, four, seven, eight, nine, ten and eleven, it charges various defendants with substantive violations of the Lacey Act, *as amended*, 18 U.S.C. § 43—which makes it a misdemeanor to engage in interstate commerce in wildlife taken in violation of state law—and with conspiracy to violate that Act, 18 U.S.C. § 371. These seven counts remain unaffected by the district judge's order. Counts two, three, five and six charge various defendants with substantive violations of the NSPA—which makes it a felony knowingly to transport stolen goods in interstate commerce—and with conspiracy to violate that Act. These four counts are based on the theory that wildlife taken in violation of state conservation laws is "stolen" within the meaning of the NSPA. The district judge rejected this theory and dismissed those counts that were based on it. We affirm.

---

1. Appellee Lovelace pled guilty to count one of the indictment on June 16, 1977, and the government agreed to move for the dismissal of the remaining counts of the indictment at the time of sentencing. He was sentenced on December 21, 1977, after the government had filed its notice of appeal from the district court's order. At that time, the Lacey Act counts were dismissed on the government's motion, but the NSPA counts were dismissed pursuant to the court's prior order. Although he is technically an appellee here, Lovelace has not participated on this appeal because even if there were a reversal the NSPA counts would still be dismissed as to him pursuant to his agreement with the government.

## DISCUSSION

New York's Environmental Conservation Law makes it unlawful for any person to "take, possess, sell, offer for sale or otherwise traffic in hard clams (Venus mercenaria) measuring less than one inch in thickness," § 13–0325(1), unless they are "unavoidably taken" and do not compose more than three percent of "any bushel, or other package or container of different measurement of clams taken from the catch or in the possession of the person offering the same for sale," § 13–0325(6). The purpose of this law prohibiting the trafficking in "undersize," or "seed," clams is to increase the supply of hard clams. 1943 Op.Att'y Gen. 222, 224. Each bushel, package or other container found to violate the three percent limitation constitutes a separate offense. § 13–0325(7). Under § 71–0923(1), each offense is a "violation" punishable by up to 15 days imprisonment or a $250 fine or both. In addition to this criminal sanction, § 71–0919(1)(c) permits the imposition of a civil penalty, which, under § 71–0925(7–a), may vary between $25 and $250 per bushel. The offense is not a "crime" as defined in § 10.00(6) of the Penal Law, because it is neither a "felony" nor a "misdemeanor" as defined in §§ 10.00(5) and (4), respectively. Under § 71–0903, individuals charged with counseling or aiding violations or with possession, transportation, buying or selling of clams unlawfully taken by others must be shown to have acted with guilty knowledge. For those charged with the actual taking, however, the offense appears to be one of strict liability. See generally United States v. FMC Corp., 572 F.2d 902 (2d Cir. 1978).

The defendants are clam diggers, transporters and dealers. According to the government, they engaged in a large-scale conspiracy to harvest undersize clams from the Great South Bay of Long Island and to sell them outside New York. The government expects to prove that "the [undersize] clams taken by the defendants were systematically segregated from clams over one inch thick, secretly transported and sold at a premium. . . ." Brief at 7.[2]

There is no dispute on this appeal that the facts alleged by the government, if proved, would support a conviction based on the Lacey Act. That Act provides, in pertinent part, as follows:

Any person who—

\* \* \* \* \* \*

delivers, carries, transports, or ships, by any means whatever, or causes to be delivered, carried, transported, or shipped for commercial or noncommercial purposes or sells or causes to be sold in interstate or foreign commerce any wildlife taken, transported, or sold in any manner in violation of any law or regulation of any State or foreign country

. . . .

\* \* \* \* \* \*

shall be subject to the penalties prescribed in subsections (c) and (d) of this section.

18 U.S.C. § 43(a)(2). Subsection (c) provides for a civil penalty of not more than $5,000 for each violation; subsection (d) provides for a criminal penalty of not more than $10,000 or one year imprisonment or both. Under subsections (f)(3) and (5), the phrase "wildlife taken" covers the collection of mollusks and, perforce, the harvesting of clams involved here. Guilty knowledge of state law has been held to be an essential element for purposes of subsections (c) and (d). See United States v. Jonas Brothers of Seattle, Inc., 368 F.Supp. 783 (D.Alaska 1974).

The government apparently finds the misdemeanor penalties provided for in the Lacey Act and in the second paragraph of the general conspiracy statute inadequate, for the indictment includes four felony counts based on the NSPA. These counts are based on the same conduct described in other counts of the indictment as violations of the Lacey Act. It is the government's

---

**2.** Small clams are thought by some to taste better than large clams, hence the premium. See generally, Claiborne, Going Down to the Sea in Search of the Wild Cherrystone, N.Y. Times, May 31, 1978, at C1, C6.

theory that clams taken in violation of state environmental conservation laws are "stolen" within the meaning of the NSPA and that, therefore, engaging in interstate commerce in clams so taken violates not only the Lacey Act but also the NSPA. Since the appeal was argued, Judge Sifton of the District Court for the Eastern District of New York has sustained a similar claim by the government with respect to skins of wild alligators of which Louisiana had declared itself to be the owner. *United States v. Klapisch*, 77 Cr. 620 (June 12, 1978).

The NSPA provides, in pertinent part: "Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud . . . Shall be fined not more than $10,000 or imprisoned not more than ten years, or both." 18 U.S.C. § 2314. The meaning of the word "stolen" as used in this statute is relatively well-established. The leading case is *United States v. Turley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957), where the Supreme Court construed the word as it was used in the National Motor Vehicle Theft Act, *as amended*, 18 U.S.C. § 2312 ("NMVTA"). We regard *Turley* as controlling here because the word "stolen" is used in the same way in both the NSPA and the NMVTA. This is hardly surprising inasmuch as the NSPA was designed "[t]o extend the provisions of the National Motor Vehicle Theft Act to other stolen property." 48 Stat. 794. In *Turley* the Court defined the word to include "all felonious takings . . . with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." 352 U.S. at 417, 77 S.Ct. at 402. The Court, in a footnote, explained that the term "felonious" was "used in the sense of having criminal intent rather than with reference

to any distinction between felonies and misdemeanors." *Id.* at 410 n.4, 77 S.Ct. at 399. Turley had obtained possession of an automobile lawfully from its owner and had subsequently converted it to his own use. At common law, he would have been guilty not of larceny, but of embezzlement. Thus, the Court was making it clear that the definition of "stolen" was sufficiently broad to abolish the archaic distinctions between larceny by trespass, larceny by trick, embezzlement and obtaining property by false pretenses. *See United States v. Benson*, 548 F.2d 42, 44–46 (2d Cir.), *cert. denied*, 430 U.S. 910, 97 S.Ct. 1185, 51 L.Ed.2d 588 (1977) (construing the NSPA). Although the scope of the term is broad, it is not as elastic as the government suggests here. Even under the broad definition in *Turley*, stealing is still essentially an offense against another person's proprietary or possessory interests in property. *See United States v. McClain*, 545 F.2d 988, 1002 (5th Cir. 1977); Black's Law Dictionary 1583–84 (4th ed. 1968). This does not mean that the victim must be shown to have had good title, *see United States v. Benson, supra*, but it does mean that the question whether a particular item is "stolen" cannot be decided in a vacuum, without considering whether there has been some sort of interference with a property interest. *But see United States v. Plott*, 345 F.Supp. 1229, 1231–32 (S.D.N.Y.1972), *disapproved in United States v. McClain, supra*, 545 F.2d at 1002 n.31.[3] Accordingly, we must review a few basic legal principles regarding property rights in wildlife.

As a general rule, wild fish, birds and animals are owned by no one. Property rights in them are obtained by reducing them to possession. *See Douglas v. Seacoast Products, Inc.*, 431 U.S. 265, 284, 97 S.Ct. 1740, 52 L.Ed.2d 304 (1977); *Missouri v. Holland*, 252 U.S. 416, 434, 40 S.Ct. 382, 64 L.Ed. 641 (1920); *Geer v. Connecticut*,

---

**3.** The district judge in *Plott* said in dictum that "the act of stealing is as much defined by the taker's intent to keep property to which he has no right as it is by esoteric questions of legal title in others." 345 F.Supp. at 1232. Like

Judge Wisdom in *McClain*, we find this reasoning unpersuasive. 545 F.2d at 1002 n.31. It is our view that the act of stealing is defined by *both* the taker's intent *and* the sometimes esoteric questions of property rights in others.

161 U.S. 519, 539–40, 16 S.Ct. 600, 40 L.Ed. 793 (1896) (Field, J., dissenting); *Pierson v. Post*, 3 Cai.Cas. 175 (N.Y.Sup.Ct.1805); O. W. Holmes, *The Common Law* 171–72 (M. Howe ed. 1963). Unlike most wild animals, however, clams, mussels and other sedentary or burrowing mollusks do not roam to any significant degree. Hence, they are deemed to be in the possession of the owner, if any, of the land in which they are found. *McKee v. Gratz*, 260 U.S. 127, 135, 43 S.Ct. 16, 67 L.Ed. 167 (1922).

Because clams are owned by the owner of the land in which they are found, taking them without the permission of the owner is a larceny under New York law. *See People v. Morrison*, 194 N.Y. 175, 177, 86 N.E. 1120 (1909). The government does not concede that a simple common law larceny by trespassory taking cannot be proved here. However, the government has conceded that this indictment was not intended to charge a larceny. The district judge considered this concession to be as binding as a bill of particulars. *See United States v. Leonelli*, 428 F.Supp. 880, 883 (S.D.N.Y. 1977). The government's willingness to thus limit its proof is apparently a result of the difficulty that would be entailed in proving who owned the land from which each bushel of undersize clams came. In order to avoid litigating the uncertainties of title, the government argues that all it needs to prove is that the clams were taken illegally.

■ A simple example will illustrate why the government's broad definition of "stolen" cannot be accepted. If a person purchased bottom land in the Great South Bay of Long Island and, knowing of New York's size limitation, harvested $6,000 worth of undersize clams and sold them to restaurants in New Jersey, this would unquestionably violate both New York's Environmental Conservation Law and the Lacey Act. It would also satisfy the interstate transportation and jurisdictional amount limitations of the NSPA. It would be absurd to suggest, however, that this hypothetical person had engaged in a "felonious [taking] with intent to deprive the owner of the

rights and benefits of ownership . . . ." *United States v. Turley, supra*, 352 U.S. at 417, 77 S.Ct. at 402. It is clear that no owner has been deprived of any rights or benefits of ownership, for it was the owner who took the clams. Similarly, if the owner gave 33 individuals engaged in interstate sale of clams permission to harvest all the undersize clams they wanted, the Environmental Conservation Law and the Lacey Act would be violated; if we accepted the government's broad definition of the term "stolen," so would the NSPA. Again, however, it could not be said that the owner had been wrongfully deprived of property. It requires no further discussion to demonstrate that the theory that stealing includes all illegal takings will not withstand analysis.

The government argues that, to the extent that any deprivation of ownership is necessary, this exists by virtue of § 11–0105 of the New York Environmental Conservation Law. This reads:

> The State of New York owns all fish, game, wildlife, shellfish, crustacea and protected insects in the state, except those legally acquired and held in private ownership. Any person who kills, takes or possesses such fish, game, wildlife, shellfish, crustacea or protected insects thereby consents that title thereto shall remain in the state for the purpose of regulating and controlling their use and disposition.

Section 11–0103(9) defines "shellfish" to include clams. The meaning and effect of such declarations in state laws has been the subject of recent consideration by the Supreme Court in the context of constitutional attacks on state legislation relating to animals based on preemption by federal statutes, *see Douglas v. Seacoast Products, Inc., supra*, and such clauses of the Constitution as the Commerce Clause, Art. I, § 8, the Privileges and Immunities Clause, Art. IV, § 2, cl. 1; and the Equal Protection Clause of the Fourteenth Amendment, *see Baldwin v. Fish and Game Commission of Montana*, 436 U.S. 371, 385, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978); *id.* at 389–396, 98 S.Ct.

1852 (Burger, *C. J.*, concurring); *id.* at 392, 98 S.Ct. 1852 (Brennan, *J.*, dissenting). In *Douglas*, the Court called common law characterizations of state ownership of wildlife "no more than a 19th century legal fiction expressing the importance to its people that a State have power to preserve and regulate the exploitation of an important resource." 431 U.S. at 284, 97 S.Ct. at 1751 (citing cases). However, in *Baldwin* the majority qualified this by adding:

> The fact that the State's control over wildlife is not exclusive and absolute in the face of federal regulation and certain federally protected interests does not compel the conclusion that it is meaningless in their absence.

436 U.S. at 386, 98 S.Ct. at 1861. Here, a literal interpretation of New York's claim of ownership would offend no federal policy. The question remains, however, whether New York has asserted a true ownership interest in wildlife such as the Fifth Circuit, in *United States v. McClain, supra*, 545 F.2d 1000–03, held that Mexico had done since 1972 with respect to pre-Columbian artifacts. We think not.

■ As we read the New York statutes, a person who takes wildlife in violation of the Environmental Conservation Law would not be guilty of larceny under § 155.05(1) of the Penal Law. Larceny is an offense against an owner of property, and under § 155.00(5), an owner is one "who has a right of possession . . . superior to that of the taker . . . ." While the second sentence of § 11–0105 of the Environmental Conservation Law provides that one who kills, takes or possesses wildlife "consents that title thereto shall remain in the state," this is solely "for the purpose of regulating and controlling their use and disposition." Further evidence that New York does not claim a right of possession of wildlife is provided by the fact that whereas a possessor is normally subject to liability for harm done by wild animals, *see* Restatement of Torts 2d § 503 (1977), New York State is not liable for damage done by wild animals it professes to "own." *See Barrett v. State*, 220 N.Y. 423, 116 N.E. 99 (1917). *Cf. Leger v. Louisiana Dept. of Wildlife,*

306 So.2d 391 (Ct. of App.1975), *writ of review denied*, 310 So.2d 630 (Sup.Ct.1975), with respect to a Louisiana statute. It would be anomalous that while a violator of the Environmental Conservation Law would not be subject to prosecution in New York for larceny, he should be held to have stolen property within the meaning of the NSPA.

The government also makes an argument based on the ownership of the clams by some Long Island towns. "Most, and perhaps all, of the clams allegedly transported by the defendants here were taken from bay bottoms owned by . . . Brookhaven, Islip, and Babylon [which] hold their lands 'in private as distinguished from public ownership' [and which] have prohibited the taking of clams less than one inch thick." Brief at 12–13. As we read this argument, however, the government is merely offering to prove a simple, common law larceny by trespassory taking from the towns. We recognize that the government has never conceded that a larceny cannot be proven here, but it has conceded that a larceny is not charged in the instant indictment. Accordingly, it is no longer free to proceed on that basis. In any event, the government's focus on the towns, to the exclusion of private owners, indicates that the defendants were correct when they argued below, without contradiction by the government, that it would be impossible to prove with any degree of precision who owned the clams. The government has referred us to no case which suggests that the NSPA authorizes proof of theft on an indiscriminate "[m]ost, and perhaps all" basis. If the government was willing and able to prove a simple larceny from the towns, it should have so informed the district court.

■ We do not suggest that a larceny could not be proven here. If an owner gives permission to a clam digger to take mature clams and expressly prohibits the taking of seed clams, and if the digger exceeds this license and intentionally takes both mature and seed clams, then the digger may be guilty of a larceny of the seed

clams. It would be no less a larceny if the owner were a town and the express prohibition were found in a town ordinance. Proof of a larceny on the facts of this case, however, would be complex and difficult, and we do not fault the government for attempting to simplify matters by proving a simple violation of the Environmental Conservation Law. If that is all the government chooses to prove, however, then it must be content with convictions under the Lacey Act.[4]

Affirmed.

4. In our view, the term "stolen" does not even arguably cover mere violations of the Environmental Conservation Law. Thus, it is unnecessary for us to rely upon the rule of lenity under which ambiguities regarding the scope of criminal statutes are resolved in favor of the accused. *See Simpson v. United States,* 435 U.S. 6, 13–16, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). Nor is it necessary to rely on "the principle that gives precedence to the terms of the more specific statute where a general statute [here the NSPA] and a specific statute [here the Lacey Act] speak to the same concern, even if the general provision was enacted later," *id.* at 15, 98 S.Ct. at 914, *citing Preiser v. Rodriguez,* 411 U.S. 475, 489–90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), for we find that the NSPA and the Lacey Act speak to different concerns.