**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph A. RISO, Defendant-Appellant.**

**No. 16879.**

United States Court of Appeals
Seventh Circuit.

Dec. 27, 1968.

Rehearing Denied Jan. 20, 1969.

Certiorari Denied April 7, 1969.

See 89 S.Ct. 1306.

Alvin W. Block, Stephen Levy, Alvin R. Becker, Chicago, Ill., for Joseph A. Riso, defendant-appellant.

Thomas A. Foran, U. S. Atty., Michael B. Nash, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, of counsel.

Before SWYGERT, CUMMINGS and KERNER, Circuit Judges.

CUMMINGS, Circuit Judge.

In a one-count indictment defendant Joseph A. Riso was charged with receiving and concealing a painting worth more than $5,000 and entitled "The Virgin and Child with St. Nicholas of Bari and a Donor," which had been transported from Indiana to Chicago. The indictment alleged that defendant knew that the painting had been stolen and that Section 2315 of the Criminal Code (18 U.S.C. § 2315) was accordingly violated.

Defendant's motion to suppress evidence was denied, the jury returned a verdict of guilty, and a sentence of 8 years was imposed.

The evidence showed that this painting had been stolen from the library of St. Joseph's College in Rensselaer, Indiana, on October 31 or November 1, 1965. According to the complaint filed with the United States Commissioner, the Government had received information from a confidential informant that the defendant would transport the painting on January 25, 1967. At 10:15 a. m. on that date, FBI agent Baker, who had been assigned to investigate this theft, observed a woman in nun's garb [1] enter a frame shop on West Hubbard Street in Chicago with a flat 30" x 40" package. He looked through the front window of the shop, and at 10:55 a. m. he observed a single painting, which he recognized to be the stolen painting from a newspaper reproduction and other descriptions in his possession, on the counter. An unidentified male employee stood behind the counter examining the painting while the

1. According to the Government's closing argument below, she may not actually have been a nun.

nun stood in front of the counter. There were no other paintings of similar size nearby. A multi-colored blanket and newspaper wadding were on the counter near the painting.

At 11:15 a. m., the nun left the shop and entered a taxicab with the same package. Baker and other agents in several vehicles followed the cab to St. Andrew's Church at Addison and Paulina Streets, Chicago. There the taxi driver, carrying the same package, escorted the nun up the steps of the church, where he was paid and dismissed, leaving the package with her.

Minutes later, defendant arrived in his 1966 Pontiac, parked it, opened the car trunk, and ascended the church steps to join the waiting nun. They then came down and the nun disappeared into an adjoining areaway with the package. In a few seconds, she reappeared with the same package and handed it to defendant. At this point, Baker's associate, FBI agent Bloom, called defendant by name and placed him under arrest. Defendant immediately dropped the package in his car trunk and slammed it shut. By using the defendant's car-key, taken from his hand without resistance, agent Baker opened the trunk and saw the same large, flat package that the nun had given defendant. Also in the trunk were numerous small packages addressed to defendant. After advising defendant of his rights, Baker asked him who owned the contents of the car trunk. Defendant replied that "Nothing in the trunk is mine," despite the fact that the small packages were addressed to him. Baker then asked the defendant whether he was the owner of the large flat package, and defendant answered, "I found it on the sidewalk." Upon opening the package, Baker discovered the painting described in the indictment. It was wrapped in the same blanket that he had observed on the counter of the frame shop.

On his way to the Chicago office of the FBI, defendant volunteered to agents Baker and Bloom that the nun was his cousin and had nothing to do with the matter, and that he was embarrassed to have been found in this situation in her presence because it would be embarrassing to his family. Defendant expressed his appreciation of the FBI's courteous treatment of the nun. The nun was not detained, although FBI agents Kellogg and Bell talked to her at the scene of defendant's arrest.

To prove that the painting was worth more than $5,000, the Government introduced the testimony of Burton Fredericksen, the curator of the J. Paul Getty Museum in Malibu, California.

Defendant did not adduce any evidence. His motion for acquittal was denied, as was his motion for a new trial or judgment notwithstanding the verdict.

■ Defendant first argues that his arrest was not based on probable cause, so that the related search of the car trunk was invalid. Here the extensive surveillance activity surrounding the frame shop and the expected delivery or pick-up of the painting suggests that the FBI agents believed the painting still to be traveling through unclean hands. There would have been no occasion for stealth if the painting were thought to have passed into the hands of an innocent purchaser. While such advance information about contraband goods might not, in the absence of verification or corroboration of the source, be sufficient to support a valid arrest, where, as here, the observed facts bore out the expectations of the surveilling agents, there was probable cause for an arrest. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; United States v. Burgess, 402 F.2d 85 (4th Cir. 1968) (per curiam). The chain of events described above more than suffices to warrant a prudent man in believing that the defendant was knowingly in receipt of stolen goods. Search of the defendant's automobile, which might have been used to remove the goods from the vicinity, was also warranted as incidental to the arrest. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. Moreover,

since the arresting agent saw the package before the trunk of the auto was slammed shut, he did not violate defendant's Fourth Amendment rights by opening the trunk to retrieve the package. Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (per curiam).

■ Defendant's principal contention is that the Government failed to prove that the painting was worth more than the statutory minimum of $5,000. The $5,000 limitation was not designed to protect receivers of stolen goods but "to avoid overtaxing the Department of Justice." United States v. Schaffer, 266 F.2d 435, 440 (2d Cir. 1959), affirmed, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921. Under Section 2315 of the Criminal Code (18 U.S.C. § 2315), value can be determined by the market value of the property at the time and place of the theft (United States v. Tippett, 353 F.2d 335, 337 (4th Cir. 1965), certiorari denied, 383 U.S. 908, 86 S.Ct. 889, 15 L.Ed.2d 664), or by its value at any time during its receipt and concealment (cf. United States v. Kramer, 289 F.2d 909, 921 (2d Cir. 1961)). Here the district court instructed the jury that value "ordinarily means market value, or the price a willing buyer would pay to a willing seller at the time the property was stolen," so that the jury's verdict of guilty means that it found that the painting was worth in excess of $5,000 in 1965.

■ The jury's verdict was amply supported by the only expert evidence. Thus museum curator Fredericksen testified that the painting was executed around 1530 by a member of the School of Giovanni Bellini in Venice, Italy, and that it was worth $17,000 at the time of the February 1968 trial. He also testified that the painting had been valued between $17,000 and $26,000 by the Parke-Bernet Gallery of New York City in 1953.[2] There was nothing in the record to show that the value of the painthad diminished below the requisite $5,-

000 at the time of the 1965 theft. In enacting Section 2315, Congress certainly did not require proof that the stolen property was worth more than $5,000 at the exact time and place of the theft, for accurate appraisals of value immediately prior to the theft would usually be impossible to obtain. The defendant had opportunity to introduce testimony of value but chose not to do so, nor was he able to undermine the reliability of the estimates of value given. The expert based his valuation "on what * * * it would cost to replace the picture if it had to be, how much a picture of comparable quality would be insured for by a museum such as ours, or any other museum, what it would bring on the art market in New York or even in Europe." He testified that $17,000 was the "figure at which a transaction may be made between a willing buyer and a willing seller." The jury's finding that the value of the painting exceeded $5,000 was amply sustained by his testimony.

Finally, defendant asserts that there was insufficient evidence that he knew the painting had been stolen. On this point, the trial judge gave the following charge:

"Possession of property recently stolen, if not satisfactorily explained is a circumstance from which you may reasonably draw the inference and find that the person in possession knew the property had been stolen.

"The term 'recently' is a relative term which has no fixed meaning. Whether property may be considered as recently stolen depends upon the nature of the property and all the facts and circumstances shown by the evidence."

■ Defendant does not assail this instruction but claims that there was no evidence to support the knowledge requirement of Section 2315. This is a jury question, and the evidence must be viewed in the light most favorable to the Government. United States v. Rabin,

---

2. The painting brought $2600 when sold at the Parke-Bernet Gallery in 1953, but there was only one bidder.

**138**

316 F.2d 564 (7th Cir. 1963), certiorari denied, 375 U.S. 815, 84 S.Ct. 48, 11 L. Ed.2d 50. Circumstantial evidence is enough to sustain a finding of knowledge of the stolen character of the property. United States v. Spatuzza, 331 F.2d 214 (7th Cir. 1964), certiorari denied, 379 U.S. 829, 85 S.Ct. 58, 13 L.Ed.2d 38. The courts uniformly hold that the possession of fruits of crime by an individual recently after the commission of the crime justifies an inference that the possession was with knowledge that the property was stolen. Lee v. United States, 363 F.2d 469, 474, 475 (8th Cir. 1966), certiorari denied, 385 U.S. 947, 87 S.Ct. 323, 17 L.Ed.2d 227. As noted there, whether possession is sufficiently recent to support this element of guilt is a question of fact solely for the jury. Here it is true that the painting did not "surface" until 15 months after its theft, but still longer periods have been held sufficient to support the inference. United States v. Allegrucci, 299 F.2d 811, 815, note 4 (3d Cir. 1962).

 Even if the recent possession doctrine is not applied, there was sufficient evidence to support the element of guilty knowledge on defendant's part. As in Torres v. United States, 270 F.2d 252, 259 (9th Cir. 1959), certiorari denied, 362 U.S. 921, 80 S.Ct. 675, 4 L.Ed. 2d 741, there was affirmative action on Riso's part which indicated guilty knowledge. First of all, as noted in the statement of facts, there were suspicious circumstances surrounding his receipt of the painting. The nun's transmission of this package to Riso was sufficiently extraordinary to discount this as a bona fide arms-length sale of a valuable piece of art. Cf. United States v. Cosentino, 372 F.2d 61 (7th Cir. 1967). As soon as he was detected with the package, the defendant dropped it inside his car trunk, slammed it shut in an effort at concealment and then refused to open it. Moreover, his statements to the FBI agents after his arrest implied guilty knowledge. Cf. United States v. Scoleri, 374 F.2d 859 (7th Cir. 1967), certiorari denied, 387 U.S. 920, 87 S.Ct. 2035, 18 L.Ed.2d

974. The district court quite properly instructed the jury that if it found that those exculpatory statements were untrue, it could consider them as circumstantial evidence of defendant's consciousness of guilt. The jury was surely entitled to disbelieve Riso's statement that he owned none of the small packages in the car trunk, even though they were addressed to him. The jury could also regard his statement of having found the box containing the painting on the sidewalk to be patently false. Similarly, the statements, recounted herein, intended to absolve the nun of any involvement with the episode or knowledge of unlawful acts may have impressed the jury as admissions of his own complicity and guilty knowledge. Guilty knowledge was sufficiently proved.

The judgment is affirmed.