The UNITED STATES of America, Plaintiff-Appellee,

v.

J. D. VICARS, Defendant-Appellant.

No. 72-1102.

United States Court of Appeals, Sixth Circuit.

Aug. 9, 1972.

Ernest Goodman, Goodman, Eden, Robb, Millender, Goodman & Bedrosian, Detroit, Mich., for defendant-appellant.

Richard L. Delonis, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee; Ralph B. Guy, Jr., U. S. Atty., on brief.

Before WEICK, EDWARDS and CELEBREZZE, Circuit Judges.

WEICK, Circuit Judge.

Appellant Vicars was charged in the District Court in a two-count indictment with transporting and causing to be transported a Beechcraft airplane No. N9809Z valued at $17,000 from Detroit, Michigan to Palacios, Texas, knowing that the airplane had been taken by fraud in violation of Sections 2314 and 2, Title 18, United States Code (Count 1) and (Count 2) with causing to be transported from Detroit to Fort Worth, Texas, Beechcraft airplane No. N287W knowing that the airplane had been stolen in violation of Sections 2312 and 2, Title 18, United States Code.

He was tried by a jury and at the conclusion of the government's case, the District Court granted defendant's motion for judgment of acquittal on Count 2 and denied his motion as to Count 1. The case was submitted to the jury resulting in a verdict of guilty. Sentence was suspended and defendant was placed on probation for two years. He appealed. We affirm.

In his appeal, Vicars contends (1) that the evidence was insufficient to support the conviction, and (2) that the Government's evidence relating to Count 2 was so prejudicial as to require a trial before another jury.

I

The criminal charges grew out of an agreement to trade airplanes entered into between Vicars who operated Vicars Industries at Meachem Field, Fort Worth, Texas and TRB Flying Service, Inc. (TRB) of Detroit, Michigan, whereby Vicars was to transfer the title to his Beechcraft airplane No. N287W referred to as the "Whiskey" airplane to TRB, and was to receive TRB's Beechcraft airplane No. N9809Z, referred to as the "Zebra" airplane, plus $18,000 in cash within ten days and with all liens free and clear.

The fraud claimed by the Government was Vicars' representations to TRB that (1) the Whiskey airplane was air-worthy when it was not and (2) that the Whiskey airplane was free and clear of all encumbrances when liens in excess of $30,000 existed thereon.

The Whiskey airplane had been acquired by Vicars in 1966 and he undertook to make certain modifications in it, contracting with one Cornstubble to do the work. When Cornstubble became ill, Vicars employed Carl J. Elliot, a licensed airplane mechanic, to complete the work. During the progress of the work, Cornstubble wrote to Federal Aviation Agency (FAA) advising that the modifications were not being made in conformity with approved data or specifications. FAA officials then met several times with Vicars and Elliot. FAA Forms 377 reporting on the progress of the work had been submitted to the agency by Elliot. In one of them was contained false information as to the origin of the flaps put on aircraft No. N287W, which false entry was made at the request of Vicars.

Elliot had made an annual inspection of the Whiskey aircraft and reported to FAA that it was airworthy. This inspection did not, however, return the aircraft to service since FAA had not approved the modifications which was an entirely different matter from an inspection.

Elliot and Vicars met with an FAA inspector at Fort Worth and discussed the modifications. Vicars inquired of the inspector as to when FAA would tell him that the aircraft was airworthy. The inspector responded that the aircraft would have to be opened up and furnishings removed for a thorough inspection of the alterations. Vicars objected to this procedure stating that it would cost him $2,400 to open up the aircraft. Vicars stated that he would

furnish FAA more data and left the meeting angry. The next day the aircraft was flown by Vicars to Detroit. When FAA located the aircraft it was immediately grounded.

Vicars had previously endeavored to sell the Whiskey aircraft to TRB Flying Service of Detroit. He talked with Mrs. Fordree, Managing Director of TRB, several times on the telephone in an effort to negotiate a sale. Finally, he told Mrs. Fordree that he would fly the aircraft to Detroit at his own expense so that she could examine it, to which she consented.

Vicars arrived in Detroit with the Whiskey airplane two days after his meeting with the FAA inspector in Fort Worth. TRB pilots made some tests of the aircraft. Vicars represented to Mrs. Fordree that the Whiskey aircraft was airworthy and free from liens. The North Fort Worth State Bank held liens thereon at the time of about $32,000 on which Vicars had made no payments. Vicars did not disclose to Mrs. Fordree his meeting with the FAA inspector in Fort Worth or that FAA had not approved the modifications in the aircraft.

In the agreement Vicars consented to make certain additional modifications on the Whiskey aircraft, install a cargo door on it and loan TRB a suitable plane during the modifications. After the agreement was concluded, Vicars left the Whiskey airplane with TRB in Detroit and flew the Zebra airplane to Texas.

TRB experienced a number of difficulties with the Whiskey airplane and refused to pay the $18,000 cash within the ten-day period. Several days after expiration of the ten-day period, FAA sent a telegram to TRB suspending the airworthiness certificate of the Whiskey aircraft and grounding it until the plane had been reinspected and its airworthiness determined to the satisfaction of the Administrator.

Mrs. Fordree had several telephone conversations with Vicars in which he made proposals which she declined to accept, as she felt she could no longer trust him. She wanted to cancel the transaction restoring each party to the status quo but he refused. He told her: "Baby, you bought yourself an airplane and when I'm through with you, you'll have 30 years of college." Vicars was willing, however, to rescind the deal if he was paid $7,000 for expenses.

Vicars broke into and entered the TRB hangar at the Detroit City Airport early one Sunday morning while it was dark, removed the Whiskey aircraft therefrom and had it flown to Texas. There Vicars completed the modifications and FAA approved the aircraft as airworthy. The North Fort Worth Bank repossessed it and sold the plane for only $7,500. Vicars had removed the Zebra plane to Palacios, Texas and stripped it of its motors and all usable parts leaving only a shell worth about $500 on which there is a lien of about $19,000.

In determining whether the evidence was sufficient to support the judgment of conviction, we must view the evidence as well as the inferences reasonably to be drawn therefrom in the most favorable light to the Government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Handy, 454 F.2d 885 (9th Cir. 1971), pending on certiorari; United States v. Leggett, 292 F.2d 423 (6th Cir. 1961).

In our opinion, there was substantial evidence tending to prove that Vicars represented that the Whiskey aircraft was airworthy and free from encumbrances. Both of these representations were false as Vicars well knew. He concealed from TRB his conversations in Forth Worth with an inspector of FAA which indicated rather clearly that a false report had been filed with FAA relative to the modifications on the Whiskey aircraft and that work would have to be performed on it before it could be approved as airworthy. Notwithstanding this knowledge Vicars caused the aircraft to be flown to Detroit in violation of FAA regulations.

Mrs. Fordree disclosed to Vicars the liens on the Zebra aircraft but he represented to her that no liens existed on the

Whiskey aircraft. Although it is true that the liens on the Whiskey aircraft might have been discovered when the transaction was closed, it is fairly inferable from the record that Mrs. Fordree would not have entered into the agreement and parted with the possession of the Zebra plane had she known of the existence of a $32,000 lien on the Whiskey plane.

The weight of the evidence as well as the credibility of the witnesses was solely for the jury to determine. Gendelman v. United States, 191 F.2d 993 (9th Cir. 1951).

Vicars relies on the certificate of airworthiness signed by Elliot. Such reliance is misplaced because of his knowledge of and participation in the filing of a false report to FAA, and his conversations with the FAA inspector hereinbefore related.

Intent is one of the elements of fraud. Because of the difficulty in exploring the mind of a defendant to ascertain his intent, it is necessary to consider the facts and circumstances of the transaction in order to make the determination. It is not necessary to prove intent by direct testimony. United States v. Leggett, *supra*. The representations made in this case may be considered as "badges of fraud." Henderson v. United States, 202 F.2d 400, 404 (6th Cir. 1953). Other indicia are:

(1) Failure to disclose the conversations between Vicars, Elliot and the FAA inspector including the filing of a false 377 report with FAA by Elliot at the direction of Vicars.

(2) Transporting the Whiskey airplane from Fort Worth to Detroit in violation of FAA regulations.

(3) Flying the Zebra aircraft to Palacios, Texas where it was hidden instead of flying it to Vicars' hangar in Fort Worth.

(4) Breaking and entering TRB's hangar at the Detroit City Airport in the night season and removing the Whiskey aircraft therefrom without the knowledge or consent of TRB.

(5) Flying the Whiskey aircraft from Detroit to Fort Worth, Texas, without the knowledge or consent of TRB, and in violation of FAA regulations.

(6) Stripping the Zebra aircraft and disposing of the stripped parts leaving only a shell.

When one or more misrepresentations are made, it is not necessary that all of them be proven in order to sustain a conviction for fraud. The conviction can be sustained if any one material misrepresentation made by the defendant was proven to be false and known to be false by him and was relied upon by the victim. Lewis v. United States, 38 F.2d 406 (9th Cir. 1930). See also Todorow v. United States, 173 F.2d 439 (9th Cir. 1949), cert. den'd, 337 U.S. 925, 69 S.Ct. 1169, 93 L.Ed. 1733.

II

Vicars contends that the evidence offered by the government to support Count 2 of the indictment was so prejudicial as to require a trial before another jury. We disagree. It is not contended that the evidence was irrelevant as to Count 2 and it was admissible when offered. It is not required that the Court declare a mistrial whenever some counts of a multi-count indictment are dismissed at the close of the government's case. No motion for severance was made before the commencement of the government's case. Furthermore, the transaction was of a continuing nature and some of the evidence offered in support of Count 2 was relevant to the issues of Count 1 particularly on the issue of intent. The proof related to the same transaction. United States v. Ragsdale, 438 F.2d 21 (5th Cir. 1971). Proof of another crime is admissible "where it was committed as part of the same transaction and forms a part of the res gestae." United States v. Crowe, 188 F.2d 209 (7th Cir. 1951).

The theory adopted by the District Court in granting the motion for judgment of acquittal on Count 2 was that Vicars could not be convicted of stealing

an airplane to which he held the legal title. This theory overlooks the fact that TRB was the equitable owner of the Whiskey aircraft, and was rightfully in possession of it. Vicars was the equitable owner of the Zebra plane and removed it to Texas where he stripped it and disposed of the parts. He certainly cannot have both planes.

The word "stolen" in the statute is not to be limited to cases involving common law larceny. The congressional purpose of eliminating the interstate traffic in unlawfully-obtained motor vehicles should be considered. United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957).

In any event, the acquittal on Count 2 did not render inadmissible relevant evidence relating to the entire transaction. If Vicars' conduct portrayed him in a bad light, he has no one to blame but himself.

Affirmed.

EDWARDS, Circuit Judge, concurred in the result.