UNITED STATES of America

v.

John JONES a/k/a Clifford Waymon, Robert Moore.

Crim. No. 76–483.

United States District Court, E. D. Pennsylvania.

May 3, 1977.

David R. Strawbridge, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Douglas H. Riblet, Philadelphia, Pa., for Robert Moore.

John Rogers Carroll, Philadelphia, Pa., for John Jones.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

The defendants are charged with conspiracy to violate 18 U.S.C. § 2314 (interstate shipment of stolen property valued in excess of $5,000). The facts have been stipulated, and the case is before the Court for decision non-jury. The crucial issue is whether the value threshold of $5,000 has been established. I expressly adopt and incorporate herein all of the facts set forth in the stipulation, which I now summarize as follows:

A quantity of blank forms intended to be imprinted as theater tickets were stolen from Ticketron outlets in Philadelphia and Jenkintown, Pennsylvania, and came into the possession of the defendants. By means of a photographic printing process performed in Philadelphia, the defendants caused these blank forms to resemble legitimate tickets to rock-and-roll concerts and similar events at various locations outside of Pennsylvania. They then caused these facsimile tickets to be transported in interstate commerce and sold at or near the locations of the respective concerts.

The blank ticket forms cost Ticketron approximately $57. There is no other evidence in the case suggesting the value of the blank forms. There is no suggestion of a "thieves market" for such items, or any other basis for assigning a value to the forms at the time of the theft.

■ The spurious tickets which were transported in interstate commerce, based upon the prices which the defendants printed upon the tickets, had an aggregate face value in excess of $15,000. It is clear that the total amount realized by the defendants from the sale of these spurious tickets was in excess of $5,000. Although a total of six different concerts, hence at least six different interstate shipments, are involved, and although it is doubtful whether the face amount of the tickets shipped on any one occasion was in excess of $5,000, the case involves a single overall conspiracy and it is therefore appropriate to use the figures representing the total of all shipments. *Schaffer v. U. S.,* 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960), *affirming,* 266 F.2d 435 (2d Cir. 1959).

The criminal sanctions of 18 U.S.C. § 2314 are applicable to

"whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud. . . ."

Determining whether the facts of this case bring it within the statutory proscription

involves two related issues: (1) whether value is to be determined as of the time of theft, or as of the time of shipment; and (2) how complete must be the identity between what was stolen and what was transported.

In *U. S. v. Lester,* 282 F.2d 750, 755 (3d Cir. 1960), *cert. denied,* 364 U.S. 937, 81 S.Ct. 385, 5 L.Ed.2d 368 (1961), it was stated that value, for purposes of § 2314, is determined as of the time of theft. However, there was no occasion in that case for the Court to focus on the time as of which value is to be determined; the Court was considering the problem of goods for which there was no "market" (geophysical maps), although the goods obviously had very great value. The actual holding of the Court is summed up in the following language:

> "Of course in most instances market value is used because under ordinary circumstances it is easily ascertainable. But where an exceptional type of goods that has no market value is the subject matter of the Indictment, any reasonable method may be employed to ascribe an equivalent monetary value to the items."

In cases arising under 18 U.S.C. § 2315 (receipt, concealment or disposition of goods stolen from interstate commerce), and in other somewhat analogous contexts, there is authority from other circuits to the effect that value may be determined at any time during the receipt or concealment of the stolen property. *See, e. g., U. S. v. Riso,* 405 F.2d 134 (7th Cir. 1968); *cert. denied,* 394 U.S. 959, 89 S.Ct. 1306, 22 L.Ed.2d 560 (1969); *U. S. v. Kramer,* 289 F.2d 909 (2d Cir. 1961).

In this Circuit, the most recent discussion of the problem occurred in *U. S. v. Weinberg,* 478 F.2d 1351 (3d Cir. 1973), a case arising under 18 U.S.C. § 2315. There, genuine stock certificates having a value greatly in excess of $5,000 were stolen from interstate commerce. The theft was discovered, and a "stop-order" issued. Thereafter, the defendant negotiated the certificates, unaware that the stop-order had been issued. The trial court charged the jury that value was to be determined as of the

date of receipt or disposition of the property. The evidence at trial did not address the possible effects of the stop order upon the value as of that time. Later, in denying post-trial motions, the District Court concluded that value as of the time of the original theft should control. 345 F.Supp. 824, 833 (E.D.Pa.1972). The Court of Appeals expressly declined to evaluate the correctness of either proposition, because the par value of the stock greatly exceeded $5,000, and § 2311 defines "value" as par or market value, whichever is higher.

In *U. S. v. Tauro,* 493 F.2d 1402 (3d Cir. 1973) (*Table*), the Court affirmed without opinion a District Court decision, 362 F.Supp. 688 (W.D.Pa.1973), which discussed the issue and, citing the *Kramer* and *Riso* cases, *supra,* adopted the view that value can be determined at any time during the receipt or concealment. However, this was essentially *dictum.* In *Tauro,* blank stock certificates were stolen in Denver, Colorado. The defendant negotiated the certificates in Pittsburgh, Pennsylvania, at which time the blanks had been fraudulently filled in, and signatures forged; as a result of the Pittsburgh transaction, the defendant caused the certificates to be transported in interstate commerce from Pittsburgh to New York City, and from New York back to Denver, Colorado. For present purposes, the significant distinctions between our case and the *Tauro* case are that in the latter, what was transported in interstate commerce clearly constituted "falsely made, forged, altered, or counterfeited securities" under the third paragraph of § 2314, hence no value was required to be proved; and to the extent that the charge involved the transportation of the original blank certificates from Denver to Pittsburgh, there was expert testimony to establish that the blanks themselves had value greatly in excess of $5,000.

In the present case, if theater tickets could be deemed "securities" within the meaning of § 2314, there would be no problem, since what was transported was obviously "falsely make, forged, altered, or counterfeited." However, the Government

properly concedes that theater tickets are not "securities" within the meaning of § 2314, as defined in § 2311. In *U. S. v. Jones,* 450 F.2d 523 (5th Cir. 1971), it was held that blank airline tickets fraudulently altered to resemble genuine tickets are not "securities," and that the defendant could not be convicted under § 2314 for transporting them in interstate commerce. Apparently, the quantity of stolen blanks and the maximum face amounts which could plausibly have been inserted were insufficient to bring the case under the first paragraph of § 2314; at least, the Court did not discuss that possibility.

■ It is common ground that § 2314 was not enacted to facilitate prosecution of persons involved in petty theft; the $5,000 threshold requirement stems from the perceptions of Congress as to an order of magnitude sufficient to justify intervention by the Justice Department. *See U. S. v. Schaffer,* 266 F.2d 435, 440 (2d Cir. 1959), *aff'd,* 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960), quoted with approval in *U. S. v. Lester, supra,* at p. 755. This does not mean, however, that only the prosecution has standing to insist that the threshold requirement be observed.

Some hypothetical examples may help to illuminate the the issue before the Court. If a defendant receives $4500 worth of stolen copper which, owing to market fluctuations, increases in value to $5500 at the time of the interstate shipment by the defendant, prosecution and conviction under § 2314 would surely be entirely consistent with Congressional intent. At the other extreme, a defendant who receives a stolen $400 automobile engine and installs it in his automobile, which thereby becomes worth $5500 would surely not violate § 2314 by transporting the vehicle in interstate commerce. And a defendant who receives $2 worth of stolen canvas and paints upon it a $6,000 masterpiece could surely ship the painting in interstate commerce without fear of successful prosecution under § 2314.

In each of the latter two examples, it is manifest that what was transported in interstate commerce differed materially from

what had been stolen, and that the intervening additions or alterations contributed by the defendant were what enhanced the value above $5,000. The defendant analogizes the present case to similar examples, arguing that what was stolen in the present case was merely a few pieces of relatively worthless cardboard which, but for the intervening creative efforts of the defendants, would have remained relatively valueless.

In the defendants' view, there is a gap in the Congressional scheme. Federal prosecution in cases of "creative enhancement" is limited to cases involving alteration of carefully defined "securities."

■ I am persuaded that the decided weight of appellate authority is to the effect that value, for present purposes, may properly be determined either as of the time of theft, or as of the time of shipment. But I am further persuaded that this does not end the analysis. In my view, valuation as of the time of shipment may properly be used only if it is reasonable to attribute a substantial measure of that value to what was stolen.

■ The ticket blanks which were stolen in the present case are not just ordinary pieces of cardboard. Each had already been imprinted with the Ticketron logo, and other indicia of authenticity; all that remained to be done was to fill in the name and date of the performance and the appropriate information concerning seat location or "general admission," price, etc. In causing this further information to be imprinted upon each blank, the defendants did not alter the nature of what had been stolen, but merely fulfilled it by completing the process for which the blanks were designed and intended. The comparison is between incomplete and complete theater tickets, and not between pieces of cardboard and theater tickets.

Stated otherwise, I am persuaded that virtually all of the "value" represented by the spurious tickets which were transported is attributable to the stolen blanks, rather than to the efforts of the defendants. In

these circumstances, therefore, I believe it is consistent with the intent of Congress to use the value of what was shipped as the criterion, notwithstanding the lack of evidence (or allegation) as to the value of what was stolen, at the time of the theft.

## ORDER

AND NOW, this 3rd day of May, 1977, after non-jury trial, it is ORDERED:

1. The defendants are adjudged GUILTY AS CHARGED.

2. The defendants' Motions for Judgment of Acquittal are DENIED.