UNITED STATES of America, Plaintiff,

v.

Bud TOMLINSON and Thomas
Seewald, Defendants.

No. CR83–0053–B.

United States District Court,
D. Wyoming.

Nov. 17, 1983.

David A. Kern, Asst. U.S. Atty., D. Wyo., Cheyenne, Wyo., for plaintiff.

Robert W. Tiedeken, Cheyenne, Wyo., for Tomlinson.

George A. Zunker, Cheyenne, Wyo., Stanley F. Johnson, Boulder, Colo., for Seewald.

## MEMORANDUM OPINION

BRIMMER, District Judge.

This matter came on for hearing on October 13, 1983 before the United States District Court for the District of Wyoming, upon Defendants' motions to dismiss. Counsel present were David A. Kern, Esq., Assistant United States Attorney for the United States of America, Robert W. Tiedeken, Esq., for Defendant Tomlinson, and George A. Zunker, Esq., and Stanley F. Johnson, Esq., for Defendant Seewald. The Court having reviewed the pleadings, having considered the arguments of counsel, and being otherwise advised in the premises, finds as follows:

The Indictment charges that the Defendants removed wild and free-roaming horses from federal public lands located in the State of Wyoming, transported the horses in interstate commerce, and sold them to a slaughterhouse located in New Mexico. The Defendants allegedly realized over $5,000 on such transactions. Count I (1) charges that the Defendants conspired under 18 U.S.C. § 371 to violate 16 U.S.C. § 1338, which prohibits removal of wild and free-roaming horses from federal public lands without prior notification to, and approval by, the Secretary of Interior. Counts II, III, and IV of the Indictment charge the Defendants with violations of 18 U.S.C. § 2314 through interstate transportation of stolen property. Count I (2) of the Indictment charges the Defendants violated 18 U.S.C. § 371 for conspiracy to violate 18 U.S.C. § 2314. The Defendants, seek dismissal of Counts I(2), II, III, and IV of the Indictment, alleging generally that 18 U.S.C. § 2314 is not applicable to the facts alleged in the Indictment.

The Defendants allege that 16 U.S.C. § 1338 was intended to be the exclusive criminal provision applicable to violations of the Wild Free-Roaming Horses and Burros Act, 16 U.S.C. §§ 1331–1340 (Burros Act). Where the same factual allegations support charges under two or more criminal provisions, those provisions which more specifically apply to the allegations contained in the Indictment will govern, to the exclusion of other more general provisions. *United States v. Grenagle*, 588 F.2d 87 (4th Cir.1978), cert. den., 440 U.S. 927, 99 S.Ct. 1260, 59 L.Ed.2d 482 (1979); *United States v. Frakes*, 563 F.2d 803 (6th Cir.1977), vacated on other grounds, 435

U.S. 911, 98 S.Ct. 1464, 55 L.Ed.2d 503 (1978). However, it is also "equally well established that where two statutes, each proscribing some conduct not covered by the other, overlap, a single act may violate both, at least where there is some distinction between the elements of each offense, and the violator may be prosecuted under either." *United States v. Hughes,* 626 F.2d 619, 623 (9th Cir.1980); *United States v. Lamb,* 150 F.Supp. 310, 312 (N.D.Cal. 1957). See e.g. *United States v. Beacon Brass Co.,* 344 U.S. 43, 45, 73 S.Ct. 77, 78, 97 L.Ed. 61 (1952), *United States v. Noveck,* 273 U.S. 202, 206, 47 S.Ct. 341, 341–42, 71 L.Ed. 610 (1927). The primary question is whether both offenses are proven by the same set of facts. *Id.*

█ The government must, in order to obtain a conviction under 18 U.S.C. § 2314, show that the horses in question were "stolen property", that they were worth at least $5,000, that the Defendants herein knew that the horses were stolen, and that the horses were transported in interstate commerce. *United States v. Tannuzzo,* 174 F.2d 177 (2d Cir.1949), cert. den., 338 U.S. 815, 70 S.Ct. 38, 94 L.Ed. 493 (1949), reh. den., 338 U.S. 896, 70 S.Ct. 233, 94 L.Ed. 551 (1949). In substance the offense under the NSPA is the polluting of interstate commerce with stolen property rather than the underlying theft. *United States v. Lemons,* 67 F.Supp. 985 (W.D.Mo.1946); *United States v. Marzano,* 537 F.2d 257 (7th Cir.1976), cert. den., 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977); *Lyda v. United States,* 279 F.2d 461 (5th Cir.1960); *United States v. Vicars,* 465 F.2d 720 (6th Cir.1972). By its terms, 16 U.S.C. § 1338 does not require scienter, interstate transportation, or any minimum value be involved. Thus, two separate charges have been asserted by the Indictment.

█ Defendants contend that a conviction under 16 U.S.C. § 1338 is a misdemeanor, with a maximum penalty of 1 year imprisonment and/or a $2,000 fine, while a conviction under 18 U.S.C. § 2314 is a felony, with a maximum penalty of 10 years imprisonment and/or a $10,000 fine. Defendants, relying on the decision in *United States v. Jones,* 432 F.Supp. 801 (E.D.Pa.

1977), aff'd, 571 F.2d 154 (3rd Cir.1978), cert. den., 435 U.S. 956, 98 S.Ct. 1589, 55 L.Ed.2d 808 (1978), argue that the distinction in maximum penalties should preclude prosecution under 16 U.S.C. § 1338. The Court in *United States v. Jones* refused to disturb a jury verdict convicting the defendant for violating the NSPA and stated that the $5,000 minimum value requirement is designed to prevent use of the NSPA to prosecute petty offenses. The Defendants don't deny that the $5,000 requirement would easily be met should the government prove the allegations contained in the Indictment. A conviction under 18 U.S.C. § 2314 may be sustained notwithstanding the fact that the means by which the Defendant obtained possession of the property was only a misdemeanor under applicable state or federal laws. *United States v. Sam Goody, Inc.,* 506 F.Supp. 380 (E.D.N.Y.1981); *United States v. Plott,* 345 F.Supp. 1229 (S.D.N.Y.1972). In fact a conviction under 18 U.S.C. § 2314 may be obtained though the defendant is guilty of no underlying offenses through which he obtained possession, if the requisite elements are proven. *Johnson v. United States,* 207 F.2d 314 (5th Cir.1953), cert. den., 347 U.S. 938, 74 S.Ct. 632, 98 L.Ed. 1087 (1954). It is not unreasonable to conclude that theft involving interstate commerce is generally more heinous than theft which does not. Thus the misdemeanor/felony distinction is not well-founded.

█ Finally, neither the provisions nor the legislative history of the Burros Act indicate that Congress intended to displace the applicability of 18 U.S.C. § 2314 whenever 16 U.S.C. § 1338 was applicable. Since the Burros Act was enacted after the NSPA, it is reasonable to assume that Congress was aware of 18 U.S.C. § 2314 when it enacted the Burros Act, and therefore felt there was no need to enact a parallel provision. Thus the absence of any mention of interstate commerce in the Burros Act is a non sequitur and does not logically lead the Court to conclude that Congress did not intend for the provisions of 18 U.S.C. § 2314 to apply to proceedings involving violations of 16 U.S.C. § 1338.

Next the Defendants allege that 18 U.S.C. § 2314 is not applicable to these proceedings since wild and free-roaming horses are not "property" of anyone until they are reduced to actual possession or control. Defendants further argue that Congress did not intend to acquire a "property" interest in wild and free-roaming horses and burros by enacting the Burros Act. The Defendants conclude, that since the horses were no one's property at the time that they were captured and removed from the federal public lands, they could not be "stolen" as that term is defined at common law. Therefore these horses were not "stolen property" and could not be transported in violation of the NSPA.

Whether or not Congress intended to assert a proprietary interest over wild and free-roaming horses by enacting the Burros Act is a question left undecided by the Supreme Court in *Kleppe v. New Mexico*, 426 U.S. 529, 537, 96 S.Ct. 2285, 2290, 49 L.Ed.2d 34 (1976). The Ninth Circuit Court of Appeals in *United States v. Hughes*, 626 F.2d 619 (9th Cir.1980), determined that wild and free-roaming horses which had been captured and leased under the "adopt a horse" program of the Burros Act, 16 U.S.C. § 1333(b), were property of the United States for the purpose of the general conversion provision of 18 U.S.C. § 641. However, the Court also stated "we need not reach the question ... whether Congress intended to assert a property interest in all wild horses on public lands, nor whether the government could validly prosecute a person pursuant to [18 U.S.C. § 641] ... for 'converting' horses from the public lands of the United States." Id. at pp. 621–622. Thus the question raised by the Defendants has not been clearly decided heretofore.

■ The Court believes, however, that the United States has asserted an interest in these wild and free-roaming horses and burros such that the conduct alleged in the Indictment is sufficient to constitute a violation of 18 U.S.C. § 2314. The legislative history of the Burros Act indicates that Congress intended to assert a "proprietary" interest over such animals. The Senate Report accompanying the bill declares that wild and free-roaming horses and burros inhabiting federal public lands are "national esthetic resources"; that they belong to no one person, but rather belong to "all of the American people", and that they are a "component of the public lands and an integral part of the multiple use management system", or of the "natural ecological system of the public lands." P.L. 92–195, S.Rept. No. 92–242, June 25, 1971, republished at U.S.Code, Cong. and Admin.News, 92nd Cong. 1st Sess., (1971), at pp. 2149–2158.

While neither the Burros Act, nor its legislative history, succinctly state that wild and free-roaming horses and burros are "property of the Nation", it is abundantly clear that Congress, through the Secretary of Interior, and the Secretary of Agriculture intended to exercise substantial dominion and control over such animals to the exclusion of private parties. All such animals are placed under the jurisdiction of the Secretary for management purposes. Removal of such animals from the public lands is forbidden without notice to, and approval by, the Secretary. The Secretary is to monitor and control herd populations, to require capture and leasing of excessive animals, to assure that any animals killed are extinguished in a humane manner, and otherwise to manage such animals for the purpose of protecting them from unlawful capture, branding, harassment, or death. Id., 16 U.S.C. §§ 1331–1340. A person is subject to criminal prosecution if he removes or attempts to remove such animals from federal public use without authority from the Secretary; if he maliciously causes harassment or death of such animals; if he processes, or allows to be processed, the remains of any such animals; if he sells, directly or indirectly, an animal maintained on private or leased lands under 16 U.S.C. § 1334; or if he violates any regulation issued under the Act. 16 U.S.C. § 1338(a). The Secretary is given authority to make arrests for violations of the Act, to execute warrants, and otherwise to enforce and implement the provisions of the Act. 16 U.S.C. § 1338(b).

Congress chose not to capture, breed, brand, and care for the animals, believing that this approach would in effect destroy the natural, esthetic value it sought to preserve. See S.Rept. No. 92–242, supra at p. 2152. However, private parties are effectively precluded from obtaining title to such animals by capturing the same and may only obtain a limited possessory right by obtaining consent from the Secretary under 16 U.S.C. § 1333. Thus, whether one calls the governmental interest under the Burros Act "proprietary" or "regulatory", it is hard to conceive any way in which the Congress could have chosen to exercise a greater dominion and control over such animals without reducing them to actual possession, an alternative Congress expressly rejected as contrary to its intent.

In construing the term "stolen", as it is used in the NSPA, courts have traditionally refused to apply technical common law definitions, but rather have considered the substance of the offense charged, and have sought to determine whether or not such conduct is of the type which Congress intended to reach by enacting the NSPA. *United States v. McClain*, 545 F.2d 988 (5th Cir.1977); *Bergman v. United States*, 253 F.2d 933 (6th Cir.1958); *Lyda v. United States*, supra; *United States v. Handler*, 142 F.2d 351 (2d Cir.1944), cert. den., 323 U.S. 741 (1944); *United States v. Evans*, 579 F.2d 360 (5th Cir.1978); cf. *United States v. Turley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957). Thus, Courts have applied the provisions of the NSPA to factual settings where the beneficial rights of owners of property are interferred with, notwithstanding the fact that the acts alleged would not constitute "theft" as that term was defined at common law. *Gay v. United States*, 408 F.2d 923 (8th Cir.1969), cert. den., 396 U.S. 823, 90 S.Ct. 65, 24 L.Ed.2d 74 (1969), (interstate transport under falsified invoice and bill of lading); *United States v. Lester*, 282 F.2d 750 (3rd Cir.1960), cert. den. 364 U.S. 937, 81 S.Ct. 385, 5 L.Ed.2d 368 (1961), (interstate transport of photostatic copies of maps where originals were left in owner's possession); *United States v. Drebin*, 557 F.2d 1316

(9th Cir.1977), reh. den., 572 F.2d 215 (9th Cir.), cert. den. 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978), (duplicates of copyrighted materials where originals were left in the owner's possession); *United States v. Sam Goody, Inc.*, supra, (same); *United States v. Greenwald*, 479 F.2d 320 (6th Cir.1973), cert. den., 414 U.S. 854, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973), (conversion of secret chemical formulations); *United States v. Vicars*, 465 F.2d 720 (6th Cir. 1972), (fraud concerning airworthiness of aircraft and concerning encumbrances inducing trade); *Lake v. United States*, 338 F.2d 787 (10th Cir.1964), (fraud concerning intent to pay off finance company inducing sale of automobile subsequently transported in interstate commerce).

Under the common law wild animals present within a sovereign territorial boundary were deemed to be "owned" by the government in its sovereign capacity as trustee for the benefit of its citizens. *Geer v. Connecticut*, 161 U.S. 519, 526, 16 S.Ct. 600, 603, 40 L.Ed. 793 (1896); *LaCoste v. Dept. of Conservation*, 263 U.S. 545, 549, 44 S.Ct. 186, 187, 68 L.Ed. 437 (1924). The Court in *United States v. Plott*, supra, considered the Congressional intent underlying the NSPA and the degree to which it was undermined by interstate transportation of alligator skins poached in violation of Georgia game and fish laws, and determined that such skins were "stolen property" so as to support the charge under the NSPA. The Court believed that any distinction drawn between such animal skins and any other "goods, wares and merchandise" would be merely semantic in that interstate commerce is no less polluted by transport of the prior than it is by transport of the latter. Id. 345 F.Supp. at p. 1231. The control asserted by Congress under the Burros Act is more substantial than that involved in the Georgia game and fish laws. Furthermore, the Court believes that the reasoning of the Court in *United States v. Plott* is equally applicable to the horses involved in this proceeding, and that Congress' intent in enacting both the NSPA and the Burros Act would be substantially undermined should this Court

construe the term "stolen" in the narrow manner requested by the Defendants herein.

The decision in *United States v. Plott* was criticized in *United States v. McClain*, supra, at p. 1002 fn. 30, and in *United States v. Long Cove Seafood, Inc.*, 582 F.2d 159 (2nd Cir.1978). Both cases determined that the term "stolen property" as used in the NSPA should be defined based on common law definitions, and state that wild animals, and Indian artifacts, are not "property" of a sovereign until they are reduced to actual possession, or unless the government exercises its sovereign power to declare that it has a proprietary interest in such articles. 582 F.2d at 163–165, 545 F.2d at 1002–1003.

In *United States v. McClain*, the Court held that illegal export from Mexico of pre-Columbian Indian artifacts in violation of Mexican laws which declared such artifacts to be the property of the Nation, constituted a violation of the NSPA. Thus, the discussion in such case upon which the Defendants rely is dictum rather than binding authority. And while the Court stated that "a declaration of national ownership is necessary before illegal exportation of an article can be considered theft, and the exported article considered 'stolen' within the meaning of the National Stolen Property Act", Id. 545 F.2d at pp. 1001–1002, the Court also indicates that this requirement is designed to give the finder notice of the Nation's claim of title. Id. at p. 1001, fn. 28. The Court went on to distinguish *United States v. Hollinshead*, 495 F.2d 1154 (9th Cir.1974) which involved artifacts illegally exported where there was no declaration of national ownership, stating that under the facts of that case "Anyone would have known that [the artifact] was stolen". *Id.* Since 18 U.S.C. § 2314 requires the Defendant have knowledge that the property was stolen, this requirement of a declaration of ownership is more applicable to the knowledge requirement than it is to the definition of "stolen" property.

Furthermore, any distinction between the Mexican law in *United States v. McClain*, and the Burros Act would be one of form rather than substance, since the provisions of the two enactments are to a large extent indistinguishable. The Court in *United States v. McClain* stated that the status of the artifacts was "of a very special kind—purportedly government owned, yet potentially capable of being privately possessed when acquired by purchase or discovery." Id. 545 F.2d at p. 996. A person discovering artifacts covered by the Mexican law was required to register them with the government if they were reduced to private possession, and was not permitted to export the artifact without first notifying the government and receiving prior approval. *Id.* Under the Burros Act, private possession is precluded, except where the Secretary determines that herd populations are excessive and leases animals in accordance with 16 U.S.C. § 1333. Lessee's right to the animals is merely a limited possessory interest, subject to various restrictions contained in the Burros Act, and to regulatory control. Id. Thus, if anything, the dominion and control exercised under the Burros Act over wild and free-roaming horses and burros is more substantial than that exercised over Indian artifacts under the Mexican law involved in *United States v. McClain*. The mere fact that the Mexican law declares that the artifacts are "owned by the nation" while the Burros Act, while strongly indicating such intent, never states this intent in so many words, does not convince the Court that a substantive distinction can or should be drawn between the effect of the two enactments.

The fallacy of the Defendants' argument is further sharpened when the Court compares the holding in *United States v. Hughes*, supra, to the result requested by the Defendants. In *United States v. Hughes*, the Secretary determined that wild and free-roaming horse populations on federal public lands were excessive, and, pursuant to 16 U.S.C. § 1333, determined that protection of the public lands required capture and leasing of several horses. Pursuant to such statutory provisions, the Defendant leased several horses, subject to the statutory requirement that such horses not be sold for commercial purposes. However, the Defendant sold such leased hors-

es to a slaughterhouse for commercial purposes in violation of 18 U.S.C. § 1338. The Court held that the defendant was subject to prosecution under 18 U.S.C. § 641, a felony conversion provision subjecting him to up to 10 years imprisonment and up to a $10,000 fine, as well as to prosecution under 16 U.S.C. § 1338. The Court stated that the criminal provisions in the Burros Act were designed to provide additional protection to wild and free-roaming horses and burros, and therefore refused to construe such provisions as being exclusive so as to supersede the more general criminal provisions contained in Title 18.

Here the Defendants are charged with an offense much more serious than the offense involved in *United States v. Hughes.* The Defendants allegedly captured wild and free-roaming horses present on federal lands in the State of Wyoming under a shroud of secrecy, removed them from the public lands without giving notice to, or receiving consent from, the Secretary, transported them in interstate commerce first to Colorado, and then to New Mexico, and sold them to a slaughterhouse for commercial purposes. No prior determination had been made by the Secretary that the number of such horses was excessive, or that removal was otherwise desirable or justified, as had taken place in *United States v. Hughes.* The conduct alleged goes to the heart of the evil which the Burros Act was intended to prevent, and potentially threatens to eliminate or greatly reduce the presence of wild and free-roaming horses and burros from the federal public lands. Yet the Defendants argue that the governmental interest in these horses was less substantial than it was in *United States v. Hughes* due to the fact that the United States never captured or leased these horses under the provisions of 16 U.S.C. § 1333. The Court refuses to engage in this sort of analysis. While esoteric concepts concerning title may be meaningful in helping to resolve civil disputes between competing claimants, the Court believes that considerations of Congressional intent must be paramount where, as here, more substantial interests are involved.

The Court is not unaware of the requirement that penal provisions be strictly construed, and that doubts should be resolved against the government. However, "the doctrine of strict construction is not absolute. '[T]he intention of the law-maker must govern in the construction of penal, as well [as] other statutes.'" *United States v. McClain,* supra, at p. 996. (cites omitted). As was discussed above, courts have traditionally given the term "stolen" property a broad definition in cases construing the NSPA in order to effectuate Congress' broad remedial purposes. The Court believes Congress' intent would be severely undermined if it held that horses removed from federal public lands under the circumstances alleged in the Indictment were not "stolen" property under the NSPA.

The Defendants also rely on the holding in *United States v. Long Cove Seafood, Inc.,* supra. However, that case is distinguishable on its facts. There the Court determined that the New York conservation statute involved, which merely forbade or limited the harvesting and marketing of seed clams measuring less than one inch in thickness, was merely a regulatory provision, and that the state had not "asserted a true ownership interest in" such clams, as was the case in *United States v. McClain,* supra. 582 F.2d at p. 165. The Court noted that "title" to the clams was not affected by the statute, and that under state law title to clams was held by the owner of the land upon which the clams were located. *Id.* The Court concluded that since the indictment did not charge that the clams had been taken without consent of the land owners, no interference with proprietary interests was alleged, and therefore the clams were not "stolen" property within the meaning of the NSPA. *Id.*

As was discussed above, the degree of exclusion and control exerted by Congress over wild and free-roaming horses and burros under the Burros Act is at least equal to, if not greater than, the dominion exercised by the Mexican government over artifacts under the law involved in *United States v. McClain,* supra. Thus, for the purposes of the NSPA the Court believes

that the United States has "asserted a true ownership interest in" wild horses and burros present on the federal public lands. The common law rule has been superseded by the Burros Act since title to such animals can be obtained by private individuals only upon receiving consent from the Secretary, and then the title received is only a limited possessory interest subject to limitations set forth in the Burros Act, and control by the Secretary. This scheme is clearly distinguishable from the limited regulatory interest involved in *United States v. Long Cove Seafood, Inc.*, supra. Thus, neither the holding in *United States v. McClain*, nor the holding in *United States v. Long Cove Seafood, Inc.*, supra, is inconsistent with the Court's ruling upon these Motions to Dismiss, notwithstanding the fact that both decisions include broad language not necessary to the decision rendered by the Court.

The Court in *United States v. Long Cove Seafood, Inc.*, supra, relying on *Restatement of Torts 2d* § 503, also states that "ownership" of wild animals by a sovereign is precluded unless the sovereign is held to be liable for injurious acts done by the wildlife. Id. 582 F.2d at p. 165. However, as was noted above, the meaning of the term "property" must be derived from the context in which such term is used. All the Court decides is that wild horses and burros removed from federal public lands without prior notice to, and approval from, the Secretary, and in violation of 16 U.S.C. § 1338 are "stolen" property as that term is used in 18 U.S.C. § 2314. No broader holding is necessary to determine the issue raised by these motions.

▮ Finally, the Defendants allege that wild and free-roaming horses and burros are not "goods, wares and merchandise" as that term is used in 18 U.S.C. § 2314. Much of the preceding discussion is equally applicable to the issue raised by this argument. This term, as the term "stolen" is defined in light of Congress' intent, and thus should be construed in a manner which is in furtherance of Congress' policies underlying the NSPA.

*United States v. Greenwald*, supra; *United States v. Sam Goody, Inc.*, supra. In addition, "goods, wares and merchandise" is not a term of art, and is not used in any sort of technical sense in 18 U.S.C. § 2314, but rather refers merely to "personal property or chattels which are ordinarily a subject of commerce." *American Cyanamid Company v. Sharff*, 309 F.2d 790 (3rd Cir. 1962); *United States v. Seagraves*, 265 F.2d 876 (3rd Cir.1959). Clearly horses and burros are ordinarily a subject of commerce, and thus constitute "goods, wares and merchandise" within the meaning of the NSPA. *United States v. Taylor*, 178 F.Supp. 352 (E.D.Wis.1959).

THEREFORE, IT IS HEREBY ORDERED that the Defendants' Motions to Dismiss be, and the same hereby are, denied.