99 F.3d 401
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Thomas FATATO; Gaetano Fatato, aka Guy Fatato, Defendant-Appellants.
 No. 95-1083.
 United States Court of Appeals, Second Circuit.
 Dec. 12, 1995.
 
 FOR APPELLANT: Sydney Friedler, Sheehy & Friedler, Hempstead, NY.
 FOR APPELLEE:Marjorie Miller, Assistant United States Attorney for the Southern District of New York, New York, NY.
 S.D.N.Y.
 AFFIRMED.
 Present: OAKES, McLAUGHLIN, LEVAL, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was submitted by counsel.
 
 
 2
 ON CONSIDERATION WHEREOF, it is hereby ordered, adjudged, and decreed that the judgment of the district court be and it hereby is AFFIRMED.
 
 
 3
 Thomas Fatato and his son Gaetano Fatato were convicted after a jury trial of conspiracy to cash and conceal stolen United States Treasury bonds, in violation of 18 U.S.C. § 371, and cashing and concealing stolen United States Treasury bonds, in violation of 18 U.S.C. §§ 2, 510(b). Thomas Fatato was sentenced to 21 months' imprisonment, and was ordered to pay a fine and restitution. Gaetano Fatato was sentenced to 18 months' imprisonment, and was also ordered to pay a fine and restitution. The Fatatos appeal, arguing that (1) they were denied a fair trial because the trial judge was biased in favor of the prosecution; and (2) there was insufficient evidence that the Fatatos knew the bonds were forged or stolen.
 
 
 4
 1. In determining whether a trial judge's conduct has deprived a defendant of a fair trial, we must "examine the entire record and attempt to determine whether the conduct of the trial has been such that the jurors have been impressed with the trial judge's partiality to one side to the point that this became a factor in the determination of the jury." United States v. Guglielmini, 384 F.2d 602, 605 (2d Cir.1967), cert. denied, 400 U.S. 820 (1970); see United States v. Valenti, 60 F.3d 941, 947 (2d Cir.1995). Reversal is appropriate only if the trial judge's conduct "so impressed the jury with the trial judge's partiality to the prosecution that this became a factor in determining the defendant's guilt." United States v. Pisani, 773 F.2d 397, 402 (2d Cir.1985).
 
 
 5
 After careful review of the record, we find that the trial judge's allegedly proprosecution actions did not impermissibly prejudice the defendants. Moreover, even assuming that the trial judge's actions were biased, the instructions given to the jury in this case cured any potential prejudice to the defendants. See Valenti, 60 F.3d at 947; United States v. Manko, 979 F.2d 900, 908 (2d Cir.1992), cert. denied, 113 S.Ct. 2993 (1993). Thus, we find this claim to be without merit.
 
 
 6
 2. A defendant seeking to overturn a jury verdict based on insufficient evidence bears a very heavy burden. United States v. Strauss, 999 F.2d 692, 696 (2d Cir.1993). All permissible inferences, including issues of credibility, must be drawn in the government's favor. United States v. Wallace, 59 F.3d 333, 338 (2d Cir.1995). The conviction must be upheld so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 7
 In order to have the requisite knowledge for the crimes charged in this case, the Fatatos must have known that the bonds were either stolen or forged. See 18 U.S.C. § 510(b). Recent, unexplained possession of stolen property permits an inference that the possessor knew the property was stolen. See Barnes v. United States, 412 U.S. 837, 845 (1973) (recent, unexplained possession of stolen Treasury checks, payable to persons defendant did not know, indicated "high probability" that defendant knew they were stolen); see also United States v. Jacobs, 475 F.2d 270, 280 (2d Cir.), cert. denied, 414 U.S. 821 (1973); Boehm v. United States, 271 F. 454, 456 (2d Cir.1921); United States v. Riso, 405 F.2d 134, 138 (7th Cir.1968), cert. denied, 394 U.S. 959 (1969). In addition, although false exculpatory statements made to law enforcement officials may not provide the sole basis for a conviction, they do provide circumstantial evidence of consciousness of guilt and have independent probative force. United States v. Gaviria, 740 F.2d 174, 184 (2d Cir.1984).
 
 
 8
 Here, a reasonable jury could find that there was sufficient evidence that both Thomas Fatato and Gaetano Fatato had the requisite knowledge. Thomas Fatato was charged and convicted in relation to three sets of stolen bonds: those in the name of Walter Becker (the "Becker Bonds"); those in the name of Elizabeth Turner, Lucy Turner and/or Lewis Turner (the "Turner Bonds"); and those in the name of Benjamin Pollack (the "Pollack Bonds"). Thomas Fatato cashed most of those bonds shortly after they were stolen. He gave numerous inconsistent explanations to bank employees concerning why he was cashing bonds that were not issued in his name. Some of the Pollack Bonds bore indications that Thomas had forged the endorsements. Further, the fact that he cashed all the bonds under similar circumstances at the same bank branch bears on his guilty knowledge. See, e.g., United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir.1992) (evidence of prior similar acts admissible to show knowledge). Moreover, after he was challenged by a bank employee about the bonds, he never returned to the bank, although he had theretofore conducted business on a regular, twice-daily basis for over a year.
 
 
 9
 Likewise, the evidence demonstrated that Gaetano Fatato had the requisite knowledge. Gaetano was charged and convicted only in relation to the Pollack Bonds. Expert evidence indicated that Gaetano's fingerprints were on three of the Pollack Bonds. Benjamin Pollack testified that after he purchased the bonds, he immediately put them in his safe, where they remained until they were stolen on January 27, 1994; he further testified that he did not know either Thomas or Gaetano Fatato. Thomas Fatato cashed two of the bonds bearing Gaetano's fingerprints on February 2, 1994, and cashed the third on February 4, 1994. After those bonds were cashed, they were forwarded directly to the Bureau of Public Debt in Parkersburg, West Virginia. Gaetano, therefore, could only have possessed those three bonds between January 27, 1994 and February 4, 1994--at most eight days after they were stolen. In addition, Gaetano made false statements to a government agent that neither he nor Thomas Fatato had anything to do with the redemption of the Becker Bonds; to the contrary, there was evidence that Gaetano forged the endorsements on some of the Becker Bonds, which his father cashed. See Gaviria, 740 F.2d at 184; see also Pitre, 960 F.2d at 1119. Thus, a jury could reasonably find that there was sufficient evidence that the Fatatos had the requisite knowledge.
 
 
 10
 The decision of the district court is AFFIRMED.